HIGHT *v.* KLINGENSMITH.

Opinion delivered April 29, 1905.

1. ARCHITECT—RIGHT TO RECOVER FEE.—Where an architect was employed by defendant to prepare plans for two houses, not to exceed $5,000 in cost, and prepared plans for houses to cost $8,000, it was not improper to charge the jury that the architect would be entitled to recover his fee therefor if defendant consented to the greater cost,

or if he accepted the plans after they were completed, or if, after being informed that the desired buildings would cost $8,000, he directed the architect to go on and complete the plans, or if he directed the architect to draw the plans in accordance with the desires of his wife and daughter, which was done. (Page 225.)

2. EVIDENCE—DECLARATIONS OF DEFENDANT'S WIFE.—Declarations of defendant's wife in his presence as to her wishes at the time the terms of the contract were being considered and entered upon, coupled with his acquiescence in her wishes so expressed, were admissible, not being privileged. (Page 227.)

Appeal from Washington Circuit Court.

JOHN N. TILLMAN, Judge.

Affirmed.

STATEMENT BY THE COURT.

The appellee filed his complaint against appellant, in the Washington Circuit Court for the April term, 1903, alleging that "said defendant in the fall of 1902 employed plaintiff as an architect to prepare and furnish for him sketches, plans, and specifications for a certain residence which defendant proposed to erect in Fayetteville, Ark.," and that, "in pursuance of such employment, plaintiff first drew a general outline or plan," and "submitted the same to defendant," and advised defendant of the details thereof and "of the probable cost of same," and that, "being requested by the defendant so to do, [he] made and furnished complete plans," etc. Also that he "made and furnished to him plans, details and specifications for another six-room dwelling house," and delivered said plans and specifications to defendant. That defendant stated at the time that he expected to construct said building according to the plans so furnished by plaintiff, but plaintiff alleges that defendant has "since abandoned such purposes." That, by the terms of the contract, plaintiff was to receive as compensation for his services "three per cent. of the cost of constructing said houses." That the residence first above named could be constructed for the sum of $6.350; and the other could be constructed for the sum of $2,000; making a total of $8,350. That plaintiff has received $100 in payment, and the balance of $150.50 is due and unpaid.

Appellant filed an answer, admitting the employment of plaintiff to draw for him the plans and specifications of the two buildings, and that he advised defendant of the details thereof and the cost of same; alleges that plaintiff claimed to be "a skillful architect," and to be "competent" to make "a correct estimate" of the cost of the material and construction. according to the plans and specifications; that defendant "relied entirely upon the representations of said plaintiff," all of which was well known to plaintiff at the time; that plaintiff represented to defendant that the cost of the College Avenue residence would not exceed $4,100 when completed; and that, relying upon plaintiff's "skill and superior knowledge in such matters, and not upon his own judgment," he agreed to let the contract for said building. This plaintiff also drew plans and specifications for another building, a six-room dwelling house, "which defendant desired to erect and to construct in part from the material of a brick building then standing on defendant's premises," and which building defendant then contemplated tearing down and moving to the rear of said lot. That plaintiff represented that the cost of said work would not exceed $800, and that defendant, "relying upon the superior skill and judgment of said plaintiff in the premises," and believing the representations true, agreed to let the contract at the price aforesaid; that defendant advised plaintiff that he relied on his estimate of the cost of said buildings, and that plaintiff's "positive statements were that the cost would not exceed $4,100 for the residence, and $800 for the six-room cottage;" that defendant "has endeavored in good faith to let the contract," but "has been wholly unable to do so" within the limit of cost guarantied by plaintiff. Defendant also states that he never contemplated the erection of the buildings at the cost of $6,350 for the residence and $2,000 for the cottage, and that the only agreement made by him to pay the plaintiff for the plans and specifications was based upon the estimated cost of said buildings furnished him by plaintiff; that he has paid plaintiff $100, "which was the full amount demanded by him," and that nothing more was to be paid until the houses were completed. That it is not true that defendant has "abandoned his purposes of having said buildings constructed according to said plans and

specifications," but that he is willing to have same constructed within the cost limit fixed by plantiff.

The testimony on behalf of appellee tended to show that he was employed as an architect by the appellant to draw up the plans and specifications for two dwelling houses in the city of Fayetteville. He was also to superintend the erection of the buildings. He was to receive as compensation for his services three per cent. of the cost of the buildings, and appellant was to pay appellee's actual expenses while he was superintending the work of construction. Appellant told appellee that he did not want to expend over about $4,000 for the residence on College and asked the wife and daughter of appellant about the size of the rooms, what would suit, etc., and then drew up and submitted a rough sketch. His testimony proceeds as follows:

"I went to the house once or twice, and consulted them, and they approved of everything that I was doing." "I said nothing about the price. When I had the plans half done, I took them up to Dr. Hight's house, and showed them to them." "I realized at the time that they would cost more than Dr. Hight expressly desired to expend." "I said, 'I am here to tell you that, in place of costing $4,000, the amount that Dr. Hight desired it to cost, it will cost $8,000.' This was said to Dr. Hight and wife and daughter. I said I was willing to make a new set of plans, and not charge one cent for these. Mrs. Hight said, 'It is just what I want.' Dr. Hight said nothing. He finally said, '$8,000 is a large sum, and I do not like to expend that amount of money.' He said, 'You finish the plans, and I will see.' Dr. Hight told me that he wanted to move his present house to the lower end of the lot, building the new house on the site of the old one. I told him that it would cost about $800 to move the old house and erect it on the lower end of the lot, using the same doors, windows, joists, etc. I did not make a contract for moving it. I did furnish defendant with one complete set of plans and specifications for that house.

"After waiting quite a while, I asked Dr. Hight for the money, and he said, 'How much?' I said '$100.' He said he thought it was a good deal, and I told him that I claimed the right to collect 2-3 or 2-5 of the whole bill, at the time the plans

were delivered. The doctor gave me a check for $100. I claim a balance due of $150.50.

"When Dr. Hight paid me the $100, I did not tell him that there would be any more due. The plans for the house on College Avenue were drawn to cost $8,000, and I furnished the plans with the distinct understanding that it would cost $8,000. I could make plans that would cost $4,000. I did not explain to him about any plans that would cost $6,350. Mrs. Hight said that it was just what she wanted. I said that this house would cost $8,000, and I think they understood it. Dr. Hight told me that he would not expend over $4,000. I went to the house with the plans, and told him that it would cost $8,000. They said, 'Go ahead and finish the plans.' It was part of my contract, on the three per cent. basis, to come up from time to time to superintend the construction of the buildings, and the money, as extra compensation, that I was to receive was my actual expenses, to be paid by Dr. Hight."

The testimony on behalf of appellant tended to show that he employed appellee, and was to pay him three per cent. of the cost of the buildings for plans, specifications and superintendence of construction work, but that he expressly limited the cost of the buildings to $5,000. He says: "I distinctly told Klingensmith time and again that I would not pay over $5,000 for the two buildings. I did not pay any attention to the plans and specifications. The plans were for the family; my part was to pay for them. My part was to keep within the limit of $5,000. Plans and specifications that were to cost $8,350, $8,000, or even $6,350, for the two houses were and are worthless to me, because I was not, and am not, willing to pay over $5,000; but, if Mr. Klingensmith can build them at that, I will agree to let the contract. I never at any time agreed to pay Klingensmith more than three per cent. on both buildings, and the price on both buildings not to exceed $5,000; and he was to superintend the construction of the houses; except that I was to pay his actual expenses when coming up on these trips.

"I wanted a house that would please my family. My family talked over the general outline of the house they wanted. When Klingensmith was showing the plans to my wife and daughter,

I did not look over them. I listened to their talk, and in that way got an idea. Yes, I did complain about the price that Klingensmith put upon the buildings, but this was after the plans were all in. I think that my wife and daughter were satisfied with the plans." He was asked: Q. "If they agreed upon these plans with Klingensmith, did you tell him to go on and draw them?" A. "I said to stay inside of $5,000. I told him this at the time the plans were partially completed. I never did accept the plans." Q. "Did you ever raise any objections to the plans?" A. "I raised an objection to the price. I submitted these plans for bids, but never could get any offers inside of the amount of $5,000."

He further said: "Klingensmith has never asked nor demanded that these plans and specifications be returned to him. I think that Byrnes has them. They are absolutely worthless to me, because I could not get the houses built within the limit fixed by me. I had been figuring with Byrnes, and had paid the $100 at the time that I had Byrnes's bid on the College Avenue house, of $5,600; but I knew I would not build a house at that figure. I refused Byrnes's bid, as I was determined that I would not pay that."

He testified with reference to the house that was to be torn down and rebuilt as follows: "I am willing to have the house rebuilt on the same plans for $800, but I do not propose to pay $2,000 for it."

Floyd Hight testified with reference to this in part as follows: "I was at my father's house when Klingensmith was talking about the buildings, to tear it down and rebuild it on the lower end of the lot, and Klingensmith said that it would cost about $750. I do not remember exactly, but he said he would move it himself for $800, or accept the contract, or something to that effect. Klingensmith told my father that the brick house could be torn down, moved and fixed up for $800. I think there were to be some changes. The house was to be a full two-story; the hall was to be arranged differently; but the general effect, size of rooms, etc., was to be the same, but more modern in arrangement."

At the request of appellee the court charged the jury as follows:

"1.   If the jury find that defendant employed plaintiff to draw plans for the College Avenue house and was advised by plaintiff, before the completion of the plans, that the house would cost $8,000, and that defendant, after being advised of the probable cost of the building, directed plaintiff to go on and complete the plans, he would be liable to plaintiff for his services as architect, although he may have previously determined not to invest so large amount in said building.

"2.   If the jury find that the defendant, after knowing or being fully advised of the cost of the construction of the houses according to the plans and specifications therefor exhibited in evidence, by a payment or otherwise accepted the work of plaintiff thereon, he would be liable in like manner as if he had originally contracted with plaintiff for plans of houses to cost such sum.

"3.   If one party performs labor for another for which the latter agrees to pay, and no time for payment is fixed, the law implies that payment shall be made in reasonable time."

The appellant requested instructions to the effect that appellant only contracted with appellee for plans and specifications and the superintendence of construction of houses that were to cost not exceeding $5,000, and that, if it was impossible for appellant to let the contract for the building of the houses planned by appellee within that limit, they should return a verdict for appellant.

The court refused to give these requests as asked, but modified them so as to present the issues as follows:

"I charge you that each and every stipulation that is a material inducement to a contract should be considered together, in order to determine its legal and binding force; and if you believe from the evidence that defendant, Hight, informed the plaintiff, when he undertook to draw the plans and specifications for said buildings, that he would not expend a greater sum than $5,000 in the construction and completion of the same, and that he requested the plaintiff to furnish him with plans

and specifications for buildings not to exceed that amount, then he would not be bound to carry out plans and specifications for buildings that would largely exceed that amount, unless he consented and agreed to do so, or accepted said plans after they were drawn."

The verdict was for appellee, and judgment rendered in accordance therewith for $150.50.

*A. S. Vandeventer* and *E. B. Wall,* for appellant.

The plaintiff, if entitled to recover at all, must recover upon a *quantum meruit.* 30 Ark. 186. Where an implied contract is relied upon, the burden is upon the party relying upon it to prove it. 11 Ark. 189; 29 Ark. 131; 1 Am. & Eng. Enc. Law, 959; 48 Ark. 445. No evidence varying the legal import of the contract was admissible. 64 Ark. 650; 50 Ark. 393; 55 Ark. 352.

*E. S. McDaniel,* for appellee.

The verdict is supported by the evidence. 51 Ark. 467; 23 Ark. 159; 25 Ark. 474; 31 Ark. 163; 14 Ark. 21. The admissions of appellant's wife were competent. 91 Am. Dec. 291; 30 N. Y. 330. No proper exceptions were saved to instructions given and refused. 70 Ark. 364; 3 Enc. Pl. & Pr. 427; 5 Ark. 709; 47 Ark. 230; 45 Ark. 304. A stated account cannot be impeached for fraud or mistake. 68 Ark. 534; 41 Ark. 502; 53 Ark. 155.

WOOD, J., (after stating the facts.) Appellant contends that his theory of the case was not submitted to the jury, and that there was no evidence to justify the court in modifying appellant's instructions, and in submitting to the jury the question whether or not appellant accepted plans of appellee knowing that they called for houses the construction of which would cost more than $5,000. Appellant also insists here that the court erred in using the term "accepted' in the instructions, without explaining its legal meaning and effect, inasmuch as appellant did not deny that the plans were received by him through the mails, and had never been returned to appellee.

15

We are of the opinion that these contentions of appellant are not well taken. There was evidence to justify the court in submitting to the jury the question as to whether or not the appellant, notwithstanding the fact that he had told the appellee that he did not want to expend more than $4,000 on the house on College Avenue, and notwithstanding the fact that he did not want to expend exceeding $5,000 in all, nevertheless consented at last for appellee to draw plans for the construction of buildings that would cost considerably more than that sum, and also as to whether or not he accepted such plans after they were made, knowing that they called for the construction of buildings to cost far in excess of $5,000.

We are of the opinion that the testimony, which we have set out fully in the statement, warranted an instruction such as the court gave, and justified the modifications to the prayers of appellant to which he objected. We do not think the term "accepted," as used in the instructions, in view of the issues joined in the pleadings and the testimony of the parties to support their respective contentions, could have been misleading. Moreover, appellant did not ask the court for any explanation of the term to meet the views which he here insists upon, and he is therefore not in a position to complain of the trial court for not ruling in accord with his views. Had he asked for such explanation of the term as he here insists upon, doubtless the court would have granted his request. For the term "accepted," as used, was intended evidently in no other sense than that contended for here by appellant, and could not fairly, under the circumstances, have been construed otherwise. The "real issue," as appellant's counsel aptly remarks, "was whether the defendant had received plans knowing that they called for the expenditure of nearly twice the sum of money which appellant said, at first, he was willing to expend.

Appellant also contends that it was error for the court to add, as one of the modifying clauses to its request number 1, this language, "unless you further find that Hight directed or knowingly permitted Klingensmith to proceed to draw the plans in accordance with the wishes and desires of his (Hight's) wife and daugh-

ter." * The appellant himself testified: "I wanted a house that would please my family. My family talked over the general outline of the house they wanted. When Klingensmith was showing the plans to my wife and daughter, I did not look over them. I listened to their talk, and in that way got an idea. * * * I think my wife and daughter were satisfied with the plans." Appellee swears that he informed appellant that to build a house such as his wife and daughter wished would cost $8,000, and proposed to change the plans, without expense to appellant, in order to reduce the cost of the building. At this juncture the witness says the appellant's wife and daughter, who were present, objected to any change, and that appellant instructed him to go on and draw the plans. It was to meet this phase of the evidence that the modification was made, and it was proper.

The declarations of appellant's wife in his presence at the time the terms of the contract were being considered and entered upon, coupled with his acquiescence in her wishes so expressed, were admissible. *Allison* v. *Barrow,* 91 Am. Dec. 291; *Whiting* v. *Barney,* 30 N. Y. 330; *Hammons* v. *State,* 73 Ark. 495.

Upon the whole case, we are of the opinion that it was for the jury to determine just what was the contract between appellant and appellee, and that the question was submitted fully and fairly. There was evidence sufficient here to support the verdict

The judgment is therefore affirmed.

NOTE.—*Defendant requested the court to instruct the jury as follows:

"1. I charge you that when the defendant Hight employed the plaintiff to draw the plans and specifications for the said buildings, and agreed to pay him therefor, he had a right to direct the plaintiff to draw the same so as to keep within the limits of $5,000 as the cost of said buildings; and it was the duty of plaintiff, when he undertook to do so, to observe and respect the wishes of the defendant, and to draw said plans and specifications so as to keep within the limits directed by the defendant, as to the cost of said buildings, unless you find that defendant consented to a greater cost."

The court refused to give such instruction as requested, but modified it by adding to it the following words and sentences:

"Or after said plans were completed Hight accepted same. Or, after being informed by Klingensmith that the building would cost $8,000, if you find that he was so informed by Klingensmith, directed plaintiff to go on and complete the plans, or unless you further find that Hight directed or knowingly permitted Klingensmith to proceed to draw the plans in accordance with the wishes and desires of his (Hight's) wife and daughter."