ALPHIN *v.* BLACKMON.

Opinion delivered October 28, 1929.

*Powell, Smead & Knox* and *C. E. Wright,* for appellant.

*Earle W. Moorhead,* for appellee.

BUTLER, J. S. E. Revels, an old negro preacher, died October 10, 1915, the owner of eighty acres of land, his homestead, in Union County, Arkansas. He left his widow, Ester Revels, four children and two grandchildren, surviving him, one of whom, Willie Eddie Blackmon, a grandchild, was the plaintiff in the court below.

Shortly after the death of Revels, his widow and a number of the children executed a mortgage on a part of the lands left by Revels to secure a debt, and afterwards John Moore, who had married one of the daughters of Revels, made arrangements to pay off the mortgage, and Ester Revels, the widow, and the other children of Revels, deceased, except the wife of John Moore, conveyed to him the land in controversy by quitclaim deed. This deed was executed December 5, 1919, at which time Ester Revels, the widow, John Moore and his wife, and one or two of the other children, were living on the land. There were several houses, one occupied by the widow, and the others occupied by other members of the family. After the execution of this deed, Moore lived in the house with Ester Revels for a time, and, some disagreement arising, he moved from that house into another on the same tract, and continued to reside there until some time in the latter part of 1921, when he was

sentenced to the penitentiary for one year. He was paroled along in March, 1922, and never lived on the lands in controversy again, but went to live with a Mr. Smith, who had been instrumental in securing his release from the penitentiary.

During the time Moore was in the penitentiary his wife and Ester Revels continued to reside on the lands, and until the release of Moore, when his wife joined him, and, some months after—perhaps in September, 1922—the widow, Ester Revels, also left the lands and moved to Moore's, on the Smith place. No one occupied any of the houses for a time after Ester Revels left, until Bertha Macey moved into the house vacated by the widow, and resided there for about a year, leaving it the latter part of the year 1923. The place was unoccupied from the time the Macey woman moved out until one Oliver moved in. Oliver is now dead, and the time he took possession is not definitely fixed, but it was some time in 1925 or 1926. There was a dispute as to who gave Oliver permission to occupy the premises, Moore claiming that he was occupying as his tenant, while the widow stated that Oliver went into possession by her permission and held under her. Oliver remained on the property and occupied the house for perhaps a year or eighteen months, cultivating only a small potato patch near his residence. Just when he moved away is not shown. After he vacated, Charlie Rogers moved in, about November 1, 1927, and was in possession at the time this suit was instituted, holding as a tenant of John Moore.

Beginning with the year 1919, Moore paid the taxes for each year down to and including the year 1925. J. S. Alphin paid the taxes for the year 1926, and Moore paid them for the year 1927. J. S. Alphin, one of the appellants, purchased the land under a sale made by the commissioner of the chancery court on April 8, 1926. This sale was made under a decree of the court foreclosing the mortgage given by Moore and others to Alphin to secure the payment of a debt. Previous to that time Moore

made Alphin a deed to the lands, and in June, 1927, Alphin deeded the lands back to Moore, reserving to himself a 63/64 undivided interest in all of the minerals under and upon said land, Alphin having previously executed a number of oil leases and mineral deeds to the other appellants in this case.

The mother of the appellee, Willie Eddie Blackmon, died before the death of S. E. Revels, leaving two children surviving, Willie Eddie Blackmon and a sister. This sister joined with Willie Eddie Blackmon in this suit, but seems to have parted with her interest in the lands before the suit was brought, and since has passed out of the case. The appellee was about two weeks old when his mother died, and about twenty-seven years of age when this suit was instituted. Immediately after his mother's death he was taken to another settlement in Union County, where he lived with his father's mother for some time. Later he afterwards moved with his paternal grandmother to Parkdale, Arkansas, and from there to Bastrop, Louisiana.

At the time of the purchase of the lands by John Moore, he testified that he knew nothing of the existence of the appellee, Willie Eddie Blackmon, and Blackmon himself did not know that he had an interest in any lands in Union County until he was informed of that fact some time before the bringing of this suit. This suit was instituted by the appellee as one of the heirs of S. E. Revels, deceased, to recover a one-tenth interest in and to the lands of which his ancestor died seized and possessed. The chancellor found the issues of law and fact in favor of the appellee, and decreed to him a one-tenth interest in the eighty acres of land involved in this suit.

A number of questions are raised by counsel in this case:

(1) Was the homestead abandoned by the widow? (2) Was Moore acting as a trustee for his wife and the other heirs of Revels and the widow in paying off the mortgages and acquiring a deed to the property? (3)

Was Moore's possession hostile to that of Willie Eddie Blackmon, or was his possession that of a cotenant? (4) Did Moore have actual, visible, exclusive, continuous and adverse possession for seven years?

We think a decision of the last question will be decisive of the issues of this case, and that it will not be necessary to determine the other questions raised.

The evidence regarding this possession is meager, and makes it difficult to determine. It is clear, however, that Moore's possession must rest solely on his actual occupancy, either in person or by those holding under him. He made no improvements on the property, built no houses, cleared no land, nor did anything save to farm it during the years 1920 and 1921, and during all the time that he occupied it Ester Revels, the widow, continued to reside upon it also. John Moore testified that he went to the penitentiary in the fall of 1921, and Mr. Smith got him out early in March, 1922; that he then went to work for Mr. Smith, and that he had not lived on the land in controversy since that time. He further stated that Ester Revels moved from the place about September, 1922, when she moved to his house at Mr. Smith's place; that after she left the place a man named Oliver moved on the place in 1925 or 1926, and rented it from him.

Charlie Rogers testified, and the abstract does not show when his deposition was given. He stated that he lived at that time on the land, which he rented from John Moore, and had been there, at the date of his deposition, a year and a month; that he was living at the only house on the place; that there was no floor in the house at the time he went there, and he didn't farm the land.

Bertha Macey stated that, not long after Ester Revels moved off the land, she rented the house from Ester, and stayed on the land and in the house about one year. Moore does not dispute this statement.

At the time John Moore got his deed there were three houses on the land and about forty acres in cultivation. When the depositions in this case were taken,

there was only one house left, and the land had grown up in pine bushes. There was at least an interval of one year from the time the Macey woman lived on the place that the land was wholly unoccupied, namely, the year 1924, and an interval of about the same time elapsed between the occupation of Oliver, and that of Rogers. If Bertha Macey's possession was not that of Moore, then there was an interval of three or four years when no one was in possession claiming under Moore. We think that the testimony shows that the continuity of Moore's possession was broken, and for a material length of time. The physical facts—the destruction of two houses and the condition of the land with respect to growth of bushes thereon—shows there had been a virtual abandonment of the lands after the middle of the year 1922.

The appellants seek to fortify their claim of adverse possession by proof of payment of taxes, and insist that actual pedal possession of lands may be tacked to constructive possession of them when wild and unimproved by payment of taxes upon them under color of title. It is true that where one, having color of title, pays taxes on wild and unimproved land, and thereafter takes possession of the same, continuing to pay the taxes, the benefit of the tax payments will not be forfeited by reason of the possession taken (*Gaither* v. *Gage*, 82 Ark. 51, 100 S. W. 80), but we cannot see how an application of that rule would be of any benefit to the appellants under the facts of this case. Where reliance is placed on the seven-year payment of taxes, under act March 18, 1899, the burden is upon the one making the payments to bring himself within its terms. *Bradley Lumber Co.* v. *Miller*, 94 Ark. 118, 126 S. W. 98.

This suit was filed on November 26, 1927, and if the theory of the plaintiffs is that the lands were wild and unimproved, and that title vested by reason of the payment of taxes, then it could not avail, because seven years have not elapsed since the lands became vacant in 1922,

nor have seven payments of taxes been made since that date. Ester Revels remained on the lands until the middle of 1922, and, while her possession might have been permissive, yet the fact that she was the widow of Revels, deceased, and continued in possession of the homestead, was sufficient to divest the possession of Moore of that exclusive character that would be necessary to give constructive notice of his adverse holding to one interested in the lands, and whose right to the possession was in abeyance during the possession of the owner of the homestead. Moore's possession also and the payment of taxes by him were not constructive notice to the appellee of his adversary claim, for the further reason that his wife was the owner of an undivided interest in the lands and a cotenant of the appellee, and Moore's possession might have been referable to hers, and his possession was not therefore exclusive, notorious and adverse as against all persons.

The burden is upon the party claiming by adverse possession to show that his possession was actual, open, hostile and exclusive and continued without a break for the full statutory period. *Nicklace* v. *Dickinson,* 65 Ark. 422, 46 S. W. 945; *Norwood* v. *Mayo,* 153 Ark. 620, 214 S. W. 7; *Tallman* v. *McGahhey,* 164 Ark. 205, 261 S. W. 306; *Meadow* v. *Weathers,* 167 Ark. 264, 267 S. W. 787.

We think the decree of the chancellor on the whole case is not against the preponderance of the evidence, and is supported by the principles of law hereinbefore stated. It is therefore affirmed.