Doris MIKEL *v.*
THE DEVELOPMENT COMPANY, INC.

CA 80-83                                        602 S.W. 2d 630
Supreme Court of Arkansas
Opinion delivered June 30, 1980
Rehearing denied August 25, 1980

*Martin, Vater, & Karr,* by: *Charles Karr,* for appellant.

*Harper, Young, & Smith*, by: *S. Walton Maurras*, for appellee.

JOHN A. FOGLEMAN, Chief Justice. The real issue on this appeal is whether the finding of the chancery court that appellant's use of a tract of land of which appellee was the holder of the record title was not sufficient to constitute adverse possession for more than the statutory period of seven years was clearly against the preponderance of the evidence. We find that it was not and affirm the chancery court's decree.

We need not go into elaborate detail with reference to the use of the tract by appellant. She and her husband acquired property at 1920 Waldron in Fort Smith in 1965. The dwelling house in which they thereafter resided was located on this property. Mrs. Mikel continued to live there after the death of her husband, Lyman Mikel, a Fort Smith attorney, in 1967. The tract in dispute is that part of Tract A of Brookwood Addition, which lies south of a drainage creek called Sunnymede Creek. It is a triangular tract immediately adjacent to the Mikel property. That part of Tract A north of the drainage canal had been divided into lots in 1963 and sold by appellee. Thereafter the portion of Tract A lying south of the drainage creek was omitted from the tax books until 1977. The tract involved here was offered for sale at one time prior to 1966 but never sold. At the time the Mikels moved onto the property they purchased, the part of Tract A adjacent to their lot was grown up in weeds and bushes. They commenced clearing it, planted flowers which bloom every year and maintained it just as they did their own yard. No effort has ever been made by appellee to develop or improve it. When the city commenced a project for channelization of Sunnymede Creek, Lawrence Wewers, right-of-way agent for Fort Smith, began determining the identity of owners of land adjoining the creek in order to acquire right-of-way. When he was unable to find this property listed on the tax books, he went to an abstract office to ascertain the ownership. At that time he saw appellant, asked her about the ownership of the land and told her that the city was going to take it. Not long thereafter, appellant instituted this action against appellee seeking to quiet her title to the tract on the basis that she had

been in open, actual, notorious, continuous and hostile possession with the intent to hold it adversely and in derogation of appellee and all others.

Appellant first seeks to reverse the decree of the chancery court on the ground that appellee had abandoned the property. This contention is based upon the argument that the chancellor should have held that there had been an abandonment, because of the unsuitability of the tract for development due to its limited size, triangular shape, bisection by a sewer line, and of the failure of appellee to pay taxes or list the property for taxation or maintain it, coupled with the activities of appellant on the property consisting of cutting weeds, mowing the grass, planting flowers, removing dead trees and debris, causing dirt to be hauled in to fill holes and ruts, and other such activities.

The only allegations in appellant's complaint that could have related to the issue of abandonment were those relating to appellee's ceasing to pay taxes and failing to report its ownership to the tax assessor. Although failure to pay taxes is evidence tending to show abandonment of real estate, it is not alone sufficient to prove abandonment. *Gill* v. *Dunn*, 196 Ark. 1178, 116 S.W. 2d 612. Thus, these allegations were not sufficient to raise the issue of abandonment and, since it was not otherwise raised in the trial court, we do not consider it on appeal.

Appellant also contends that the chancellor erred in refusing to strike the testimony of George Carney, president of appellee, that he gave Lyman Mikel permission to use the property in return for Mikel's promise to keep the property clean. Carney was called as a witness by appellant. During direct examination the following questions were asked and answers given:

Q. Have you ever since May the 31st of 1963 caused The Development Company to have anyone go out and cut the grass on this property?

A. It is . . . to the best of my knowledge and belief when we were developing the seven (7) lots north of the creek,

for a short period of time in there we tried to maintain that small area south of the creek to some extent, not certainly as a mowed lot, but we tried to keep a certain amount of the weeds down.

Q. Okay, how long did that continue?

A. It continued until Mr. Mikel took over maintenance of the lot with my permission.

Q. And about when was that?

A. That would have been shortly after they acquired their house, I presume. It had to be between 1965 when they bought their house and when he died.

On cross-examination Carney was asked what the arrangement with Mikel was. He related that Mikel called him and wanted to know if he (Mikel) could keep the property mowed, clean it up and use it for his kids to play on and his wife to plant flowers on. Carney said that he stipulated that Mikel was not to put any improvements on the property of a permanent nature or erect any fences on it. Carney was then asked whether Mikel, during his lifetime, kept his end of the agreement, and whether, after Mikel's death, the property continued to be used and the terms of the agreement met by Mikel's family; he answered both inquiries in the affirmative. In response to the inquiry as to when he first had any notice or knowledge that Mrs. Mikel or any other member of her family was claiming any ownership or interest in the property, Carney said that it was when the tax assessor's office called him in late 1977 or early 1978 and advised him that Mrs. Mikel was attempting to assess the property in her name. On redirect examination appellant's attorney examined Carney extensively about his failure to make any written memorandum or notation about the agreement or to write a letter to Mikel, and brought out the fact that Carney had never discussed this agreement with Mrs. Mikel or talked with her about permissive use.

After Carney testified, appellant rested and appellee called two witnesses. After they had testified, appellee recall-

ed Carney for the sole purpose of introducing five photographs of the property which had been taken by Carney. Appellee then rested.

Appellant filed a motion to strike the testimony of Carney that he had given with reference to permission he gave Lyman Mikel to use the tract in dispute. The grounds for the motion were:

1. The testimony was elicited by cross-examination beyond the scope of direct examination.

2. If given in response to a question on direct examination, the testimony was not responsive to the question.

3. The claim of permissive use was a matter constituting an affirmative defense which was not pleaded by appellee as required by Rule 8 (c), Arkansas Rules of Civil Procedure or Ark. Stat. Ann. § 27-1121 (Repl. 1962).

4. The testimony should have been excluded under the Statute of Frauds set out in Ark. Stat. Ann. § 38-101.

5. The testimony was hearsay as a statement by Carney other than one made by him while testifying at the trial and offered to prove the truth of the matter asserted.

6. The testimony was incompetent under the dead man's statute, set out in Schedule 2 of the Constitution of Arkansas, because it was about a transaction with Lyman Mikel, who is deceased.

Only after Carney had been recalled to identify the photographs had appellant's attorney made any objection to the testimony of Carney on the subject of permissive use. He had then moved to strike the testimony of Carney about conversations that he had with Mikel. The only ground ever stated was that the answer of the witness on direct examination had not been responsive to his question on direct examination. The general objection made was not sufficient to raise any question on any ground not specified. Ark. Stat.

Ann. § 28-1001, Rule 103 (a) (1) (Repl. 1979). It was certainly not apparent from the context that any ground other than the lack of responsiveness of the answer was relied upon. It is apparent, however, that this objection did go to the propriety of the cross-examination based upon the allegedly unresponsive answer.

The trial was held on September 5, 1979. It was a week after the chancellor had announced a finding that the use by the Mikels had been permissive that appellant filed her written motion to strike the testimony, setting out the grounds enumerated above.

In the first place, a motion to strike must be timely. Section 28-1001, Rule 103 (a)(1). The granting or denial of a motion to strike the testimony of a witness after he has left the witness stand is a matter lying within the sound judicial discretion of the trial judge, whose exercise of that discretion will be set aside on appeal only when there has been an abuse of discretion. *Massey* v. *Massey*, 268 Ark. 351, 596 S.W. 2d 701 (1980). We cannot say that there was an abuse here.

The deadman's statute was repealed, effective July 1, 1976. Section 2, Act 1143 of 1975. *Davis* v. *Hare*, 268 Ark. 818, 561 S.W. 2d 321. George Carney's testimony about his conversation with Lyman Mikel was not hearsay. The testimony was offered to prove that the statements were made, rather than to prove the truth of the statements. *Motors Insurance Corp.* v. *Lopez*, 217 Ark. 203, 229 S.W. 2d 228; *Mazo* v. *Boulet*, 220 Ark. 106, 246 S.W. 2d 126. See also, *Hight* v. *Klingesmith*, 75 Ark. 218, 87 S.W. 138; *Kirby* v. *Wooten*, 132 Ark. 441, 201 S.W. 115.

Testimony about the grant of permission to use the property was not barred by the statute of frauds. Appellant does not specify the sub-section of the statute of frauds upon which she relies. At any rate, this testimony related only to the intent of the parties and the nature of the possession. Even if it be taken to have been directed toward establishing a contract licensing Mikel to use the land, such a contract would not be within the statute of frauds. *Montuori* v. *Bailen*,

290 Mass. 72, 194 N.E. 714, 97 ALR 789 (1935). Such an agreement merely excludes acts which would otherwise constitute trespass or be otherwise unlawful. *Hodgkins* v. *Farrington*, 150 Mass. 19, 22 N.E. 73 (1889).

Permissive use is not an affirmative defense which must be pleaded specifically under Rule 8(c), Arkansas Rules of Civil Porcedure, or Ark. Stat. Ann. § 27-1121. Appellee specifically denied appellant's allegations that she had been in hostile possession of the property for more than seven years with the intent to hold it adversely to appellee. The nature of her use and possession was thus put in issue and she bore the burden of proving that it was hostile and adverse and not permissive. *Barclay* v. *Tussey*, 259 Ark. 238, 532 S.W. 2d 193; *Arkansas Commemorative Commission* v. *City of Little Rock*, 227 Ark. 1085, 303 S.W. 2d 569; *Alphin* v. *Blackmon*, 180 Ark. 260, 21 S.W. 2d 426; *Nicklace* v. *Dickerson*, 65 Ark. 422, 46 S.W. 945. When the testimony of Carney was given, appellant did not plead surprise. The matter of surprise was not mentioned until appellant's post-trial motion to strike was made. The matter of responsiveness of Carney's answer to appellant's question is at least subject to argument. It was, in a sense, responsive. See *Thompson* v. *AAA Lumber Co.*, 245 Ark. 518, 432 S.W. 2d 873. If it was not, objection should have been made at the time the answer was given. Ark. Stat. Ann. § 28-1001, Rule 103 (a) (1). The trial judge has some discretion in such matters. *Arkadelphia Lumber Co.* v. *Asman*, 85 Ark. 568, 107 S.W. 1171. He should be asked to exercise it promptly. No objection was made during or after appellee's attorney's cross-examination of Carney about the matter, until the examination of the witness, on recall, had been concluded. The scope and extent of cross-examination lies to a great extent within the discretion of the trial judge. *Abel of Arkansas* v. *Richards*, 236 Ark. 281, 365 S.W. 2d 705. We find no abuse here. Furthermore, when appellant's attorney examined Carney on redirect examination he was precluded from moving to strike the testimony. *Montgomery* v. *First National Bank of Newport*, 246 Ark. 502, 439 S.W. 2d 299.

Appellant's contention that the chancellor's holding that adverse possession by appellant had not been proven by a preponderance of the evidence was erroneous. She admits

that she had the burden of proving that her possession was actual, open, notorious, peaceable, continuous, hostile, and exclusive and accompanied with an intent to hold the property adversely and in derogation of, not in conformity with, the right of the true owner. No useful purpose would be served by further detailing the testimony. In addition to those activities by the Mikels already mentioned, there was evidence that appellant had permitted a television cable to be strung across the property, but had refused to permit the city to cut down some trees; she had placed, and permitted others to place, political signs on the property; her children and others had played on it. Furthermore, some of Mrs. Mikel's neighbors thought she owned the tract. The matter of appellant's intent, however, is subject to question. Mrs. Mikel never assesed the property for taxation. The fact that the property had not been assessed for taxation was called to the attention of the tax assessor in 1978 by the representative of the city who was seeking an easement. It was then that Mrs. Mikel sought to have the property assessed in her name. The testimony of the city's right-of-way representative also tended to negate an intention on the part of appellant to claim title by adverse possession. As he remembered, when he first asked her who owned the tract of land, she answered that she did not know.

The chancellor obviously believed the testimony of Carney that the use and possession of the questioned tract was permissive in its inception. We cannot say that this finding was clearly against the preponderance of the evidence. One of the primary questions in any case of adverse possession is, "When did the possession become adverse?" *Utley* v. *Ruff*, 255 Ark. 824, 502 S.W. 2d 629. If the original use and possession was permissive, it cannot become adverse until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice, equivalent to actual notice. *Still* v. *Still*, 239 Ark. 685, 394 S.W. 2d 733; *Thomas* v. *Stobaugh*, 244 Ark. 787, 427 S.W. 2d 170. The evidence of the adverse holding when the original entry is by permission must be very clear. *Minton* v. *McGowan*, 253 Ark. 945, 490 S.W. 2d 136; *Dial* v. *Armstrong*, 195 Ark. 621, 113 S.W. 2d 503. The fact that permission was given

Lyman Mikel, and not his wife, did not make his wife's holding after his death adverse, because the presumption is that the possession of those claiming under him or occupying the land under the agreement with him is also permissive. *Thomas* v. *Stobaugh*, supra; *Britt* v. *Berry*, 133 Ark. 589, 202 S.W. 830; *Fry* v. *Grismore-Hyman Co.*, 151 Ark. 44, 235 S.W. 373; *Dial* v. *Armstrong*, supra.

Mrs. Mikel never gave appellee express notice that she was claiming adversely to it, and we find nothing in her conduct or use of the property that would have brought any change in the nature of her holding to the attention of appellee until she attempted to assess the tract for taxation.

The decree is affirmed.