## MOOREHEAD *v*. DIAL.

### Opinion delivered June 17, 1918.

1. LEGITIMACY—SUFFICIENCY OF THE EVIDENCE.—In an action to quiet title to certain land, the evidence held sufficient to establish that appellant was the son of A. and B. whom he claimed as his parents and through whom he claimed to inherit.

2. LIEN FOR TAXES—VOID DEED—REDEMPTION.—A. held land under a void deed, and thereafter redeemed the land from sale for taxes and paid taxes thereon thereafter. *Held,* A. could have a lien on the land for his taxes.

3. COLOR OF TITLE—TAX SALE—CERTIFICATE OF PURCHASE.—A certificate of purchase is not color of title under Kirby's Digest, § 5057.

4. TITLE—CONSTRUCTIVE POSSESSION—LIEN FOR TAXES.—Land was forfeited for taxes, and one H. purchased the same, taking a certificate of purchase but never getting a deed. The legal title to the land fell to one M., who was in actual possession of a portion thereof. M. held possession for over seven years. *Held,* M. acquired a good title to the whole tract as against H., but that H. had a lien for the taxes paid.

Appeal from Jefferson Chancery Court; *Jno. M. Elliott,* Chancellor; reversed in part; affirmed in part.

*W. A. Singfield,* for appellant.

1. Moorehead's relation to Crawley was sustained by the evidence. The marriage to his mother was duly proven. The law presumes the legitimacy of a child born in wedlock. 81 Md. 118. See also 96 Ala. 195; 6 How. 550.

2. Appellant had title by adverse possession.

3. Harris never acquired title never having a deed. He had no color of title. 84 Ark. 316. See also, 26 *Id.* 18.

4. The Weils have no title. They only paid taxes without color of title. The title was in Moorehead, who

had actual possession for more than seven years. 26 Ark. 18; 84 *Id.* 316.

5. Dial acquired no title by the deed from the sisters of Crawley. He only redeemed the land from the lien held by the State. Kirby's Digest, § § 4879-80. Dial simply acted as an unauthorized agent of Moorehead in paying the taxes. *Ib.,* § 4880.

6. The decree is contrary to the law and evidence. The errors are palpable. The chancellor erred in holding a certificate of purchase color of title; in denying appellant his legal right of inheritance from his mother; in considering evidence outside the record; in investing title in Harris to land which Harris declared belonged to his wife; and in finding that Moorehead was not the son of Crawley when the evidence clearly established the relationship. The Weil claim is totally unsustained by the evidence.

*E. W. Brockman* and *Irving Reinberger,* for appellees.

1. In suits to quiet title plaintiff must succeed upon the strength of his own title. 90 Ark. 420. The evidence fails to show that appellant was the son of Crawley. Hearsay and reputation are not admissible. 15 Ark. 555. The land forfeited for non-payment of taxes in 1893, prior to the death of Crawley, and the time for redemption had expired. Crawley at his death held no color of title because the land had reverted to the State. The only title appellant can claim is that established by possession and that goes only to the land under fence. 65 Ark. 422. Having failed to prove that he was an heir of Crawley, Dial's purchase from the only heirs, and at tax sale and having paid taxes for many years perfected their title as against him.

2. Appellant had possession of only a part of the land that was enclosed. At Crawley's death the title was in the State until appellees purchased in 1903 from the Crawley heirs. Appellees have color of title and have paid taxes more than seven years and the land is wild

and uninclosed save twelve acres. Kirby's Digest, § 5057; 74 Ark. 302. The most appellant can claim is that part of the land actually fenced and held for seven years. 76 Ark. 447; 65 *Id.* 422; 83 *Id.* 154.

3. The entry upon unenclosed and unimproved land and removal of timber does not amount to actual possession so as to ripen into title against the holder of the legal title and one who has paid taxes under color of title for more than seven years. 92 Ark. 321. See also, 80 *Id.* 74.

4. The court had jurisdiction, and its findings are sustained by a great preponderance of the evidence.

SMITH, J. Appellant R. H. Moorehead brought suit to quiet his title to the west half of the northwest quarter and the east half of the northwest quarter of the southwest quarter of section 36, township 6 south, range 10 west, in Jefferson County, Arkansas. He claimed title as son and heir-at-law of Robin Crawley, deceased, and by adverse possession for more than seven years. The parties made defendants to this suit denied that appellant was the son of Crawley, and this was the principal question of fact in the case. The court found that appellant was not the son of Crawley and dismissed the complaint for want of equity except as to a portion of the land of which appellant had had actual possession for a sufficient length of time to acquire title in that manner.

Crawley entered the land as a homestead in 1870 and obtained a patent from the United States on November 20, 1875. It is undisputed that Crawley's wife was appellant's mother, and appellant moved on the land with Crawley and his mother when the land was first entered and he has lived there since. Crawley died about 1897 and his wife a year later. The parties all came from North Carolina together as slaves in 1850.

Appellant testified as follows: That his mother belonged to a Moorehead and that he took that name on that account. His father's owner was named Standfield, but

his father's name was changed to Crawley when his young mistress to whom he belonged married a man of that name. That his father and mother had two children, the other child dying in infancy. That his father and mother were married after the manner of slaves in North Carolina before he was born, and that he was born in 1848. His father and mother were again married after they came to Pine Bluff.

(1) A witness named Brown, who lived near the land for forty-six years, testified that Crawley spoke of Moorehead as his son. A witness named Isom Jones testified, however, that he had known Moorehead and Crawley for a number of years and that on one occasion fifteen or sixteen years ago he and Crawley and some other colored men were working on a church, and when they stopped for dinner someone asked Crawley about his son, and Crawley said Moorehead was his step-son. All persons present were surprised at the statement and ridiculed Crawley for denying that Moorehead was his son. That Crawley said he had been sent away from home somewhere by his white people and when he returned the child was there. We think this testimony was insufficient to bastardize Moorehead. The witness Jones admitted that he and all others who heard Crawley deny being the father of Moorehead were surprised at the statement. Moorehead lived with Crawley as his son and was regarded as such, and Crawley's statement of non-access is too indefinite to be conclusive of the fact stated, and especially is this true when considered in connection with Crawley's conduct towards Moorehead. Crawley and Moorehead's mother had lived together for a great many years and Moorehead lived with them as a member of the family until Crawley's death. Crawley and Moorehead's mother were living together at the time of the passage of the act of December 20, 1866, which provides that "the marriage of all persons of color who now live together as husband and wife are hereby declared to be legal and their children to be legitimate." Section 5194 Kirby's Digest. See also *Wilson* v. *Storthz,* 117 Ark.

418.   Moreover, if Crawley was the father of Moorehead, the subsequent marriage of Crawley and Moorehead's mother legitimized Moorehead, although Moorehead may have been born before any wedding occurred. Section 2639, Kirby's Digest; *Rowland* v. *Taylor, ante* p. 183.

The point is made by appellant, and appears to be well taken, that in any event he would have title to an undivided half interest in the land.   The estate was a new acquisition, and Crawley died without issue if Moorehead was not a child, and Moorehead's mother would have taken a half interest as dower, and Moorehead would have inherited this interest from his mother.   But as the son of both Crawley and his wife he inherited all the land, and not an undivided half interest only.

(2)   H. M. Dial was one of the defendants in this suit, and it appears that he had obtained a deed to the east half, west half, northwest quarter, section 36, from the two sisters of Crawley in 1903, and after obtaining this deed redeemed the land from the sale for taxes to the State and has since paid the taxes due thereon.   While it follows from what we have said that Dial did not acquire title under the deed from Crawley's sisters, he was not a mere volunteer in the payment of taxes and should have a lien on the land for the taxes paid by him, including the amount paid to redeem from the forfeiture to the State.

(3)   The west half, west half northwest quarter, section 36, was sold for the taxes of 1894 to Ferd Havis, who received from the collector a certificate of purchase therefor, and he has since paid the taxes thereon.   Havis, however, never received a tax deed, and the testimony is conflicting as to what became of the certificate of purchase.   Moorehead testified that he redeemed the land from Havis by paying him two dollars in money and by delivering him a quantity of wood and potatoes.   This was denied by Havis, and the court refused to credit Moorehead's testimony in this respect, and we think the testimony supports the court's finding on that issue.

It was shown, however, that Moorehead's enclosure was principally in the east half, west half, northwest quarter, section 36, although about four-tenths of an acre extended over into the west half, west half, northwest quarter, section 36, the land bought by Havis at the tax sale. As Havis did not obtain a tax deed upon his certificate of purchase, his title remained *in fieri.* It is shown that Havis paid taxes for more than seven years on the land which he had bought at the tax sale. But these tax payments could not have ripened into title, because the certificate of purchase was not color of title. *Townsend v. Penrose,* 84 Ark. 316.

(4) Moreover, it is shown by a plat of the land which appears in the record that Moorehead's actual possession embraced a portion of the west half of the west half of the northwest quarter, and as he had the legal title to all the land, he had the constructive possession of the unoccupied portion thereof. At the expiration of the two years allowed for redemption Havis was entitled to a deed; but he did not secure it. Moorehead continued to hold, in the absence of a tax deed to Havis, the legal title to the land by descent cast. *Holub v. Titus,* 120 Ark. 620. Moorehead had the actual possession of a portion of the land, and as he had the legal title to the remainder of the land, the law gave him the constructive possession of the remainder, and as this possession continued for more than seven years after Havis became entitled to his deed we hold that the right to obtain this deed has now been extinguished. But it would be inequitable not to allow Havis conpensation for the taxes paid by him, it being shown that he has kept down the taxes since the time of his tax purchase. A lien in his favor will, therefore, be declared for the total amount of taxes paid by him, and upon the remand of this cause the court below will ascertain the amount of these taxes and award Havis a lien therefor.

This disposes of all the land except the east half of the northwest quarter of the southwest quarter, as to which tract of land a clerk's tax deed was issued on June

21, 1895, to Ferd Havis and C. Weil, based upon a sale of that land for the taxes for the year 1892. The validity of this tax sale is not called in question, and the execution of this deed operated, therefore, to pass the title to the land there described. Havis conveyed his interest in the land to Weil, who died testate leaving the persons referred to in the record as the Weil heirs as his devisees, and the action of the court in quieting their title to the twenty acres last described is affirmed. An attempt was made to show that Moorehead had by adverse possession reacquired this title, after losing it by the sale for taxes, but the court found that the land was "wild and unoccupied," and we think the testimony supports that finding. As to the other two tracts the decree will be reversed and the cause remanded with directions to the court below to ascertain the amount of taxes paid.