WIMBERLY *v.* NORMAN.

4-9926                              253 S. W. 2d 222

Opinion delivered December 8, 1952.

*E. B. Kimpel, Jr., J. R. Wilson* and *U. A. Gentry,* for appellant.

*William S. Arnold,* for appellee.

MINOR W. MILLWEE, Justice. Appellants are the widow and heirs of R. W. Wimberly who died intestate in 1947. Appellees are the heirs and devisees of George Norman and E. W. Gates, deceased.

Appellants brought this suit against appellees to quiet their title to a 40-acre tract of land described as the NE¼ of the SE¼ of section 18, township 17 south, range 8 west, in Ashley County, Arkansas. They alleged that R. W. Wimberly acquired title by warranty deed executed in 1902 and by adverse possession of the tract from that date until his death in 1947. They also alleged that a tax deed to the land issued to George Norman and E. W. Gates in 1904 was void for numerous reasons. Appellees denied these allegations and asserted that appellants' complaint was barred by limitations and laches. Trial resulted in a decree holding that appellees had superior title to the lands and ordering dismissal of appellants' complaint.

In 1899 R. W. Wimberly moved with his family into a house on an 80-acre tract of land lying immediately north of the forty in controversy and described as the S½ of the NE¼ of section 18, township 17 south, range 8 west, under a rental contract with Amanda Thompson. On November 27, 1902, Amanda and Maria Thompson conveyed the 40 acres in controversy and the 80 acres north of said forty to R. W. Wimberly. In June, 1902, the 40 acres in controversy forfeited for the taxes of 1901 and was purchased at the tax sale by George Norman who assigned a half interest in the certificate of purchase to E. W. Gates. The land not having been redeemed, a clerk's tax deed was executed and delivered to Norman and Gates on June 21, 1904. The validity of this tax deed is now conceded. While a few of the tax payments between 1908 and 1913 were not shown, the county records having burned about 1922, it is fairly certain from the record that Norman and Gates paid the

taxes each year from 1903 to 1913 and it is undisputed that they paid said taxes from 1914 to 1946.

In 1919 R. W. Wimberly and wife executed an oil and gas lease covering the 80 acres lying north of the forty in controversy and another 40-acre tract which Wimberly then owned lying east of the 40 acres in controversy. In 1920 they executed a mortgage on the same lands which did not include the forty in controversy. This mortgage was foreclosed in 1928 and the lands involved therein were eventually purchased by Luther Wimberly, one of the appellants. R. W. Wimberly continued to reside in a house located on the 80-acre tract north of the forty in controversy, until his death in 1947 and his widow and some of their children have continued to live there since. There is a sharp dispute in the evidence as to their use or possession of the 40 acres in controversy from 1904 to 1921. Some of the appellants testified that a rail fence enclosed a part of the forty in 1902, and that R. W. Wimberly cultivated small patches on the tract until about 1921 when he quit farming; that the rail fence subsequently burned and in 1925 Wimberly constructed a wire fence along the north boundary of the 40 acres in controversy; that since 1925 they have continued to cut fire wood and fence posts from the forty and that they maintained a small pasture which ran down to a water hole on the forty until about 1942.

L. L. Morris, a timber cruiser for a lumber company who had been familiar with the tract since 1908 and had looked after it and other lands for George Norman, testified that he had observed no enclosure or fencing of the forty; that it appeared there had been some cultivation on the east side about fifty or sixty years ago, but that a good stand of timber had since grown on it and the timber recently cut showed to be of an average age of 35 or 40 years.

A railway line runs through the forty and there are about 10 acres west of the line which have never been enclosed or cultivated. While no survey of boundary lines was introduced, witnesses testified that the 1925 fence ran west from the northeast corner of the forty in

controversy and varied slightly to the south of what they thought was the true line so that it enclosed less than ½ acre of the forty in controversy.

Henry Stevens testified that about 1945 he cruised some timber for R. W. Wimberly for the purpose of selling the pulp wood therefrom and that the lands cruised were east of and across the road from the forty in controversy and nothing was said about the sale of timber from said forty. He also stated that he had since cut the timber off the north half of the forty in controversy and found no pastures or fields and that some of the timber was more than fifty years old and was scattered over the entire tract except for a plot of about 2½ acres near the road in the northeast corner where the timber was not large enough to cut as saw logs. He also stated that the water hole described by appellants was not on the forty in question and he saw no evidence that it had ever been enclosed.

The chancellor found that appellees and their predecessors acquired superior title to the 40-acre tract under their 1904 tax deed and the payment of taxes for 45 years; that the evidence was insufficient to show actual adverse possession of any portion of said land by the Wimberlys after 1925 except the narrow strip along the north fence boundary; that the evidence strongly indicated that R. W. Wimberly did not hold possession of any part of the forty in hostility to the title of Norman and Gates, but had abandoned said lands and recognized their superior title. The chancellor further found that appellants were guilty of laches in delaying institution of the present suit until after the death of Wimberly and Norman whose testimony could have made certain many uncertainties relative to the title.

Since the validity of the tax deed to Norman and Gates in 1904 is conceded, it is apparent that they thereby acquired superior record title to the lands in controversy. Ark. Stats., § 84-1302, provides, and our cases hold, that the effect of a valid clerk's tax deed is to vest in the grantee all right, title and interest of the former owner. *Nelson v. Pierce,* 119 Ark. 291, 177 S. W. 899.

But appellants contend that they reacquired title to the forty acres by continued adverse possession for more than seven years after the issuance of the tax deed. They rely on such cases as *McCrary* v. *Joyner,* 64 Ark. 547, 44 S. W. 79, and *Moorehead* v. *Dial,* 134 Ark. 548, 204 S. W. 424, which hold that the original owner of lands sold for general taxes may by subsequent adverse possession acquire title as against the purchaser at a tax sale. We agree with the chancellor that the preponderance of the evidence fails to show that R. W. Wimberly held actual adverse possession of the 40-acre tract for the statutory period after the tax deed to Norman and Gates. There are several circumstances which support this conclusion. Although Wimberly continued to pay taxes on the north 80 acres and another forty that he owned, he did not pay the taxes on the forty in controversy. The tract was not included in the mortgage, lease or sales of timber which he made from the other lands. His construction of the fence in 1925 along the boundary between the forty in controversy and the north forty where he lived also indicates a lack of intention on his part to claim the land in controversy.

Appellants also contend that even if they did not establish actual adverse possession of the lands, the deed to R. W. Wimberly in 1902 constituted color of title to the entire 120 acres conveyed and that their actual possession of a small part of the 40 acres in controversy amounted to constructive adverse possession of the entire tract. The rule relied on is that where adverse possession is entered under color of title, the grantee in the instrument constituting color of title will be deemed in constructive possession of the entire body of land described in the instrument, if in the actual possession of any part thereof. *Thornton* v. *McDonald,* 167 Ark. 114, 266 S. W. 946; *Moore* v. *McHenry,* 167 Ark. 483, 268 S. W. 858. But this rule is not one which may or should be applied in all cases and under all circumstances. *Smith* v. *Southern Kraft Corporation,* 203 Ark. 814, 159 S. W. 2d 59.

The situation here is similar to that in *Union Sawmill Co.* v. *Pagan,* 175 Ark. 559, 299 S. W. 2d 1012, where

the appellant held the legal record title to, and paid the taxes for more than seven years on, a 40-acre tract which appellees claimed by constructive adverse possession under color of title. After restating the rule of the Thornton and Moore cases, *supra,* the court said: ''The doctrine of these cases has no application here, because of the difference in the facts. The appellees here, with only color of title, seek to acquire title by constructive adverse possession against the true owner of uninclosed and unimproved lands, who has continuously paid the taxes thereon each year since the time of his purchase thereof for more than seven years. The doctrine applicable here is that the true owner of wild and unimproved lands, who has continuously paid taxes thereon from the time he acquired title thereto and for more than seven years in succession, cannot be defeated of his title and right to the actual possession of his lands by one who merely claims title thereto under color of title and by only a constructive adverse possession. The general rule is that constructive possession follows the title, and can only be overcome or defeated by an actual possession adverse thereto.'' See, also, *Sturgis* v. *Hughes,* 206 Ark. 946, 178 S. W. 2d 236, and *Anthony* v. *International Paper Co.,* 207 Ark. 396, 180 S. W. 2d 828.

But appellants say that appellees cannot claim the benefits of the seven-year statute of limitations by payment of taxes under Ark. Stats., § 37-102, because the land involved is not wild or ''unimproved and uninclosed.'' While the testimony is in dispute as to whether part of the land was enclosed and in cultivation from 1904 to 1921, a decided preponderance of the evidence shows that the land reverted to its natural state in 1921 and has so remained since. In *Moore* v. *Morris,* 118 Ark. 516, 177 S. W. 6, the court said: ''The statute applies only to 'unimproved and uninclosed land'; that is to say, land that is wild and in a state of nature. This does not mean, however, that the lands must never have had any other status, for improved lands may be permitted to return to a state of nature. The statute relates to the condition of the lands at the time the payment of taxes

is made under color of title, regardless of the former state of the lands; and if at that time they are unimproved and uninclosed, that is to say in a wild state as before the improvements were first made, then they fall within the terms of the statute and such payments amount to occupancy which will in course of time ripen into title by limitation. *Fenton* v. *Collum,* 104 Ark. 624, 150 S. W. 140.''

Appellants also say the chancellor erroneously applied the doctrine of laches. They rely upon such cases as *Fordyce* v. *Vickers,* 99 Ark. 500, 138 S. W. 1010; *Herget* v. *McLeod,* 102 Ark. 59, 143 S. W. 103, and *Carmical* v. *Arkansas Lumber Co.,* 105 Ark. 663, 152 S. W. 286, which hold that a true owner of land cannot be divested of his title thereto by his mere failure to pay taxes and the enhancement of the value of the land. But in none of these cases had the defendant tax title purchaser paid the taxes for a period as long as seven years prior to commencement of the suit. The doctrine of these cases was aptly stated as follows in *Herget* v. *McLeod, supra:* ''It will thus appear that, before the plea of laches can be available to deprive the true owner of his land, it must be shown that the party claiming same and his grantors have, prior to the commencement of the suit, paid the taxes upon the land under color of title for at least seven years, the statutory period of limitation. The fact that the true owner has failed to pay taxes on the land for a period longer than seven years will not alone bar him; but it must also appear that during such period the defendant and those under whom he claims have themselves paid taxes thereon for at least seven years prior to the institution of the suit before the true owner can be declared barred by laches.''

The facts in the case at bar are similar to those in *Burbridge* v. *Wilson,* 99 Ark. 455, 138 S. W. 880, where the original owners of wild and unoccupied lands stood by and permitted the tax title purchaser and his grantee to pay the taxes for 23 years while the value of the land was undergoing enhancement. After citing earlier cases on the subject, the court said: ''The basis of the doc-

trine of laches as applied in these cases is that the asserted rights have been abandoned by long inaction while others are permitted to bear the burdens of taxation, the value of the lands being in the meantime enhanced.'' In that case the tax payments were made under a void tax deed while it is conceded here that appellees' tax deed is valid. The factual differences in the cases which appellants rely upon and the instant case are illustrated in *McGill* v. *Adams,* 120 Ark. 249, 179 S. W. 489, where the defendant and his grantor had paid the taxes for 14 years under a void tax deed. The court said: ''We have uniformly held that the failure to pay taxes on unimproved lands for a long period of time, together with great enhancement in values, constitute an abandonment, and that an action seeking equitable relief against one who has paid taxes under those circumstances for more than seven years is barred by laches. In many other cases we have decided that there is no bar against one who has not paid taxes for as much as seven years, unless there are other intervening equities sufficient in themselves to create an estoppel.''

In the case at bar appellees and their predecessors paid the taxes under a valid tax deed for more than 20 years after the lands reverted to the status of unimproved and uninclosed lands. There are the additional circumstances of R. W. Wimberly's mortgaging, leasing, and selling timber from other lands which he owned without including the lands in controversy and the fact that he drew back his fence in 1925 to a line near the boundary between the forty in controversy and the eighty upon which he lived. We conclude that under the applicable law, the chancellor correctly held that appellants failed to establish title and right to possession of the forty acres in controversy, except the narrow strip enclosed by the 1925 fence; and that the defense of laches was properly sustained as to said lands.

But the appellants have acquired title by actual adverse possession of the narrow strip enclosed by the 1925 fence. Since the testimony does not show the exact area enclosed, the decree will be modified and the cause

remanded with directions to ascertain and describe the land so adversely occupied. In all other respects, the decree is affirmed.