Alexander W. JONES, Jr.; Dr. Michael L. Carnahan and Fred Carnahan *v*. Larry BARGER

CA 99-203                                                       1 S.W.3d 31

Court of Appeals of Arkansas
Division II
Opinion delivered October 6, 1999

*Green & Henry*, by: *David G. Henry*, for appellants.

*Carl J. Madsen*, for appellee.

J UDITH ROGERS, Judge. This is an appeal from the Chancery Court of Arkansas County denying the appellants' claim for quiet title. We reverse and remand.

Appellants filed a complaint in 1997 asking that the chancery court quiet title in them to a disputed strip of land in northern Arkansas County. The appellants also asked the chancery court to order the appellee to remove a fence that he had constructed on the land and requested damages in the amount of the fair rental value of the land for the amount of time that the land was surrounded by appellee's fence. Appellee counterclaimed for quiet title. The chancellor determined that the appellants had failed to establish their title to the land and issued a judgment denying their claim from which this appeal arises.

The testimony at trial demonstrates that both parties trace their claim of title to Lee Finch who in 1941 conveyed by warranty deed to appellee's predecessors the following property:

> . . . all that part of the South Half of the Northwest Quarter (S1/2 NW1/4) lying North and East of Bayou Meto, all in Section 24, Township 3 South, Range 6 West.

In 1944 Finch conveyed to the appellants' predecessors the following property:

> The Southwest Quarter of the Northwest Quarter . . . all lying West of and Right of Bayou, Section 24, T-3-S, R-6-W.

It is undisputed that the property descriptions both purport to convey in part the same eleven acres of land at issue and that both of the chains of title passed unbroken to the parties in this matter. The issue presented to the chancery court was simply, whose title is superior? The chancellor determined that, because

the conveyance to appellee's chain pre-dated that to the appellants,' the appellee had superior title unless the appellants were able to prove adverse possession. On appeal, appellants do not contest that in 1944 Finch erroneously issued a deed which purported to convey property which he had already conveyed to another. Nor do the appellants contest that they have failed to satisfy the required proof of adverse possession. Rather, the appellants assert that they were not required to prove adverse possession because they claim superior title by having paid the taxes under color of title over a continuous seven-year period.

Arkansas Code Annotated section 18-11-102 (1987) states:

> Unimproved and unenclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he has color of title thereto, but no person shall be entitled to invoke the benefit of this section unless he, and those under whom he claims, shall have paid the taxes for at least seven (7) years in succession.

The chancery court, in reliance upon *Alphin v. Blackmon*, 180 Ark. 260, 21 S.W.2d 426 (1929), charged the appellants with the burden of proving that they took by adverse possession under this statute. Specifically, the chancellor stated in his conclusions of law that:

> In [*Alphin*] the Court held "where reliance is placed upon seven (7) years of payment of taxes on wild and unoccupied land, the burden is on the one claiming under Acts 1889 to bring himself within the terms of the statute." That statute provides "that the burden on a party claiming title by adverse possession to show that his possession was actual, open, hostile and exclusive and continued without break for the full statutory period." Plaintiffs have failed to meet that burden and, therefore, their claim for quiet title must fail.

■ We review chancery cases *de novo* on the record. *Appollos v. International Paper Co.*, 34 Ark. App. 205, 808 S.W.2d 786 (1991). But we do not reverse the decision of the chancellor unless his findings are clearly against the preponderance of the evidence, giving due deference to his superior position to judge the credibility of the witnesses and the weight to be given their testimony. *Id.* (citing *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d

587 (1990); *Clark v. Clark*, 4 Ark. App. 153, 632 S.W.2d 432 (1982); Ark. R. Civ. P. 52(a)). "However, a chancellor's conclusion of law is not entitled to the same deference. If a chancellor erroneously applies the law and the appellant suffers prejudice, the erroneous ruling is reversed. Manifestly, a chancellor does not have a better opportunity to apply the law than does the appellate court." *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 339-40, 916 S.W.2d 95, 99 (1996).

■ In the instant case, the law was erroneously applied to the facts presented. Arkansas Code Annotated section 18-11-102 has three requirements: (1) the land must be unimproved and unenclosed; (2) the party paying the taxes must have color of title; and (3) the party paying the taxes must have done so for at least seven years in succession. If these three conditions are met, the land is deemed to be in the possession of the person who is paying the taxes. "The possession contemplated by this section has the same effect *as if* the person paying the taxes had been in actual, adverse possession of the land for the full seven-year period." *Appollos, supra* (emphasis added). The statute does not require actual adverse possession.[1]

■ Both the chancery court and the appellee rely upon the case of *Alphin v. Blachmon, supra*, as authority that the party claiming under section 18-11-102 must prove actual adverse possession. This reliance is misplaced. As the appellants correctly pointed out in their brief, the court in *Alphin* addressed the issue of adverse possession only because the party claiming title by virtue of paying

---

[1] We recognize that the Arkansas General Assembly amended the statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Ark. Code Ann. § 18-11-106. In order for a claimant to establish title by actual adverse possession under the new law, the claimant must prove color of title and payment of taxes in addition to all of the elements necessary under existing adverse possession law in the State of Arkansas. *Id*. Although this issue has not been spoken to by the Supreme Court, we read these amendments as applicable only to the law of actual adverse possession. Act 776 does not affect the issue before the court in this matter, namely the quieting of title in one who under color of title pays taxes on wild and unimproved land for seven consecutive years. *Cf. Color of Title and Payment of Taxes: The New Requirements Under Arkansas Adverse Possession Law*, 50 ARK. L. REV. 489.

taxes had not satisfied the requirements of the predecessor to section 18-11-102.

> The appellants seek to fortify their claim of adverse possession by proof of payment of taxes, and insist that actual pedal possession of lands may be tacked to constructive possession of them when wild and unimproved by payment of taxes upon them under color of title. *It is true that where one, having color of title, pays taxes on wild and unimproved land, and thereafter takes possession of the same, continuing to pay the taxes, the benefit of the tax payments will not be forfeited by reason of the possession taken* (Gaither v. Gage, 82 Ark. 51, 100 S.W. 80), but we cannot see how an application of that rule would be of any benefit to the appellants under the facts of this case. *Where reliance is placed on the seven-year payment of taxes, under act March 18, 1899, the burden is upon the one making the payments to bring himself within its terms. Bradley Lumber Co. v. Miller,* 94 Ark. 118, 126 S.W. 98.

> This suit was filed on November 26, 1927, and if the theory of the plaintiffs is that the lands were wild and unimproved, and that title vested by reason of the payment of taxes, then it could not avail, *because seven years have not elapsed since the lands became vacant in 1922, nor have seven payments of taxes been made since that date.*

*Alphin,* 180 Ark. at 265-66 (emphasis added). Because the appellants in *Alphin* had not satisfied the requirement of seven years taxes and vacancy, the court went on to consider whether the parties could take by adverse possession. The court did not require adverse possession as an element under the statute then in effect. It was error for the chancery court to require the appellant to prove actual adverse possession of the land. Therefore, we must reverse.

In his "Findings of Fact and Conclusion of Law," the chancellor made the following findings of fact:

> 4. Subsequent to that time, the Finches conveyed to the predecessors in title of the Plaintiff, the following described property:
>
> "The Southwest Quarter of the Northwest Quarter . . ."
>
> by Warranty Deed on November 9, 1944.

6. The testimony of both parties was that the lands were wild and unimproved.

8. That the testimony of the Plaintiff and his predecessors in title was that they have hunted, posted and otherwise occupied the property, and since 1958 paid the taxes on said property, except for the years of 1994, 1995, and 1996.

The findings of fact outlined above are clearly supported by the record.

## Unimproved and Unenclosed:

The statute applies only to "unimproved and unenclosed land;" that is to say, land that is wild and in a state of nature. This does not mean, however, that the lands must never have had any other status, for improved lands may be permitted to return to a state of nature. The statute relates to the condition of the lands at the time the payment of taxes is made under color of title, regardless [of the] former state of the lands; and if at that time are unimproved and unenclosed, that is to say in a wild state as before the improvements were first made, then they fall within the terms of the statute and such payments amount to occupancy which will in course of time ripen into title by limitation.

## Appollos, supra.

■ Although there was a fence erected on the property by the appellee in 1996, the testimony shows that the land was unimproved and unenclosed until that time as required by the statute. Further, although the court stated that the land was "wild" and "unimproved," the wording is synonymous with the statutory requirement of "unimproved and unenclosed." "This court has used the word 'wild' interchangeably with the words 'unimproved and unenclosed,' relative to lands claimed under said statute, and held that a finding that lands were wild was sufficient to show that they were 'unenclosed and unimproved.'" *Schmeltzer v. Scheid*, 203 Ark. 274, 157 S.W.2d 193 (1941). The wild and unimproved nature of the property at issue here was not disputed by either party.

*Color of Title:*

There is no dispute that the appellants claim title to the property pursuant to the 1944 warranty deed from Finch to appellants' predecessors in title. It is also undisputed that this title passed continuously and unbroken down to the appellants through a series of warranty and trustee deeds. However, the appellee argues that the appellants cannot claim title to the land because appellee's title was first and is therefore superior.

> "Color of title is not, in law, title at all. It is a void paper, having the semblence of a muniment of title, to which, for certain purposes, the law attributes certain qualities of title. Its chief office or purpose is to define the limits of the claim under it. Nevertheless, it must purport to pass title. In form, it must be a deed, a will, or some other paper or instrument by which title usually and ordinarily passes. Such qualities as are imputed to it by the law, for limited purposes, are purely fictitious and are accorded to it only to work out just results. Fictions are never used in procedure or law for any other purpose."

*Weast v. Hereinafter Described Lands*, 33 Ark. App. 157, 803 S.W.2d 565 (1991) (citations omitted) (quoting *Bailey v. Jarvis*, 212 Ark. 675, 208 S.W.2d 13 (1948)). "A trustee's deed, whether valid, void, or voidable, is color of title unless facts in avoidance appear on the face of the instrument." *Buchner v. Sewell*, 216 Ark. 221, 225 S.W.2d 525 (1949).

It is irrelevant in this matter that the deed to appellee's chain of title predated that to the appellants' chain of title. Appellants must have only "color of title." They clearly have.

*Payment of Taxes:*

At trial, the appellants introduced into evidence a compilation of tax records showing that they and their predecessors in title had paid the taxes on the land in question continuously from 1958 through 1994.

"Where one cannot show a perfect title, he may establish a prima facie title by showing that he and those under whom he claims had color of title to the lands for more than seven years and

during that time he, and those under whom he claims, had continuously paid taxes on the property." *Broadhead, supra.* "Payment of taxes under color of title for more than seven years on unenclosed and unimproved property confers title by limitation." *Appollos, supra.* "In *Towson v. Denson,* 74 Ark. 302, 86 S.W. 661, it was said that payment of taxes on unimproved and unenclosed land under color of title for seven years, if consecutive, 'constitutes an investiture of title.' . . . . [An] investiture follows such payments when all statutory requirements are met and [ ] the title so acquired is fee simple." *Buchner, supra.* "The purpose of the statute was to create a constructive possession by the payment of taxes which will oust the constructive possession of the owner who did not pay taxes." *Hubble v. Grimes,* 211 Ark. 49, 199 S.W.2d 313 (1947). "The act . . . , by its express terms, applies only to persons who pay taxes under color of title, but its obvious and declared purpose was to encourage the payment of taxes and to protect persons who pay them." *Schmeltzer, supra.*

█    "The taxes on the lands in controversy have been paid by the appellants each and every year since 1905, with the exception of the year 1923. The lands in controversy being unimproved and uninclosed, the appellant acquired title thereto by such payment of taxes." *Union Sawmill Co. v. Pagan,* 175 Ark. 559, 299 S.W. 1012 (1927). "Where lands continue to be unimproved and uninclosed, and seven successive payments of taxes have been made, the possession continues and becomes complete, unless the possession be broken by adverse entry or by commencement of an action before expiration of the seven-year period from the date of the first payment." *Id.*

█    The evidence clearly demonstrates in this matter that the appellants and their predecessors began paying the taxes on the disputed property in 1958 and did so continuously until 1994. This action was brought in 1997, far outside of the necessary seven years to defeat title. Nor has the appellee regained title through adverse possession as the evidence clearly shows that the land was not occupied or improved at any time. The only indicia of possession which the appellee can rely upon is the posting of the property in 1986 and 1987. This is clearly not seven years worth of possession sufficient to amount to adverse possession and over-

come the appellants' title. Nor did this adverse action take place within the initial seven years after the appellants' predecessors began paying taxes in 1958.

As stated above, the purpose of the statute is to encourage the payment of taxes. "One may not discharge his obligation to pay his taxes by showing that he thought he had paid them when his misapprehension was not induced by some officer charged with the duty of collecting the taxes." *Schmeltzer, supra.* In the instant matter, appellee's predecessors in title claim that they were informed by the tax assessor that they were indeed paying the taxes on the property in question. This testimony is disputed by the tax assessor himself who testifies that he did not so inform them. The tax assessor claims that he informed the appellee's predecessors that they did not own the land in question and that they needed to get it surveyed. Regardless of this dispute in testimony, the appellee is not able to overcome appellants' title because this conversation with the tax assessor did not occur until sometime in the 1980s. The appellants had been paying the taxes since 1958. Therefore, the appellee's inaction cannot be attributed to the tax assessor for the initial seven years of payments.

Because all of the conditions of the statute were satisfied, title in fee simple is vested in the appellants. *See Buckner, supra.* We remand so that the chancery court can enter an order quieting title to the disputed land in the appellants and address the two remaining issues: whether the appellee should be directed to remove the fence that he erected and whether the appellee is responsible for the fair rental value of the property during the time the fence was standing.

Reversed and remanded.

ROAF and MEADS, JJ. agree.