Bobbye Farrar BONDS *v.* Barry CARTER

01-943 75 S.W.3d 192

Supreme Court of Arkansas
Opinion delivered May 16, 2002

*Tim A. Womack, P.A.*, by: *Tim A. Womack*, for appellant.

*Bell Law Firm, P.A.*, by: *Ronny J. Bell* and *Karen D. Talbot*, for appellee.

TOM GLAZE, Justice. This is a quiet-title action brought by appellant Bobbye Bonds to determine the ownership of a certain tract of land in Columbia County. Eddie Smith formerly owned all of the land in question. On June 19, 1980, Smith conveyed a timber deed to appellee Barry Carter, granting Carter "all the merchantable pine and hardwood timber standing, growing and being on" a parcel of land in Columbia County; Carter paid $1,000 in consideration for the right to cut and remove timber from the described land for 100 years. On January 15, 1981, Smith conveyed a warranty deed to Bobbye Bonds, covering the same parcel of land, and reserving to himself all the oil, gas, and mineral interests thereon. Bonds originally filed a petition to set aside the timber deed in 1982, but the case was abandoned after Eddie Smith died.

Nearly twenty years later, on February 18, 2000, Bonds sued to quiet title in her land, alleging that, under Ark. Code Ann.

§ 18-11-102 (1987), she had acquired title to the land by paying taxes on the "wild and unimproved" property every year since 1981. Further, Bonds alleged that Carter's timber deed was void *ab initio* for inadequate consideration, for violating the rule against perpetuities, and for unconscionability under the Uniform Commercial Code. Carter answered, pleading, among other things, that Bonds's action was barred by the statute of limitations. Both parties then moved for summary judgment. In her motion, Bonds argued that, since Carter did not dispute that the land in question was wild and unimproved, she had acquired title to the property through adverse possession because she had paid taxes on it for more than fifteen years. Carter's motion agreed that the facts were undisputed, but asserted that his timber deed was superior to Bonds's warranty deed, and further, that Bonds's action was barred by the statute of limitations. Carter also pointed out that his validly recorded timber deed served to put Bonds on constructive notice of a superior interest in the land, and that she purchased the property subject to the timber deed.

The trial court held a hearing on the motions for summary judgment on September 13, 2000, and the hearing resulted in a court order finding that the 1980 timber deed was valid and that, while Bonds was vested with the fee simple title in the property, the issue was whether or not that vested interest interest was subject to the previously granted timber deed. Initially, the court denied both motions for summary judgment at that time; however, the court later dismissed all claims challenging the validity of the timber deed. The court also found that § 18-11-102 had no bearing on the controversy between the parties and did not affect the validity of the timber deed.

On appeal, Bonds raises two points for reversal: 1) the trial court erred in not finding Carter's severed timber estate on wild and unimproved property was adversely possessed when Bonds obtained the underlying fee to the property and paid all taxes on it from 1981 through 1998; and 2) the 100-year timber deed is an ongoing unconscionable contract, presenting public policy concerns that the trial court should have addressed to invalidate the instrument, and the court erred in dismissing the action due to statute of limitations considerations.

For her first point on appeal, Bonds argues that a recorded, severed timber estate on wild and unimproved land is adversely possessed when the owner of the underlying fee pays all taxes assessed on the land (both real and personal property) from 1981 to 1998. She contends that, under § 18-11-102, her payment of taxes vests title in her. That statute provides as follows:

> Unimproved and unenclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he has color of title thereto, but no person shall be entitled to invoke the benefit of this section unless he, and those under whom he claims, shall have paid the taxes for at least seven (7) years in succession.

Bonds further relies on *Jones v. Barger*, 67 Ark. App. 337, 1 S.W.3d 31 (1999), wherein the court of appeals held that one claiming title to land by having paid taxes on that land for seven years need not have actually adversely possessed the land in question. In *Jones*, both parties had received warranty deeds to the same parcel of land, and the court was faced with determining whose title was superior. The court of appeals held that, under § 18-11-102, the Joneses had paid taxes on unimproved and unenclosed land, under color of title, for at least seven years. *Jones*, 67 Ark. App. at 341. Because that statute did not require "actual adverse possession," the court of appeals concluded that the Joneses had met the statutory requirements and were thus entitled to have the title to the land vested in them. *Id.* at 346.

The facts of the instant case are distinguishable from those in *Jones*. *Jones* involved two parties claiming the same title to the same estate in the land; here, on the other hand, we are presented with a situation in which one party has the underlying surface rights, and the other possesses the timber rights, which have been severed from the surface. Arkansas's taxation statutes make it clear that timber rights are separate and distinct from the land itself. Ark. Code Ann. § 26-26-1109 (Repl. 1997), dealing with taxation of timber rights, provides in pertinent part as follows:

> (a)(1) *When the timber rights in any land shall, by conveyance or otherwise, be held by one (1) or more persons, firms, or corporations,*

*and the fee simple in the land by one (1) or more other persons,* firms, or corporations, *it shall be the duty of the assessor,* when advised of the fact, either by personal notice or by recording of the deeds in the office of the recorder of the county, *to assess the timber rights in the lands separate from the soil.*

(2) In such case, a sale of the timber rights for nonpayment of taxes shall not affect the title to the soil itself, nor shall a sale of the latter for nonpayment of taxes affect the title to the timber rights.

(Emphasis added.) In sum, this statute provides that timber rights held by one person are to be assessed separately from the fee simple rights of another in the land, because the timber rights are separate from another's rights in the soil.

██ ██ Further, when a purchaser of land records his deed, it serves to put any subsequent purchaser on notice of the earlier deed. In this respect, Ark. Code Ann. § 14-15-404 (Repl. 1998) states the following:

(a) *Every deed, bond, or instrument of writing affecting the title,* in law or equity, *to any real or personal property,* within this state which is, or may be, required by law to be acknowledged or proved and recorded *shall be constructive notice to all persons from the time the instrument is filed for record in the office of the recorder of the proper county.*

(Emphasis added.) Here, Carter recorded his timber deed six months before Bonds ever received the warranty deed from Smith. Thus, Bonds was on constructive notice of Carter's deed.

The question remains, however, as to whether or not Bonds could adversely possess Carter's timber interest, when she was on notice of the fact that those interests had been severed and recorded prior to her taking the warranty deed to the remainder of the land. As Carter points out, there is no case law in Arkansas dealing with the question of adverse possession of timber rights. There is case law, though, setting out what must happen before one can adversely possess mineral rights. While mineral and timber rights differ in many respects, both are severable from the land on which they are found.

 In *Claybrooke v. Barnes*, 180 Ark. 678, 22 S.W.2d 390 (1929), Laura Barnes contended that she held title to certain mineral rights through adverse possession. The mineral rights had been excepted from a deed to the surface rights dated November 17, 1911, but no such exception was contained in subsequent quitclaim deeds to the property. Barnes, who was a subsequent grantee to the surface estate, eventually claimed she held title to the mineral rights as well, although she had never exploited the mineral rights until she attempted to execute a mineral lease on the land in 1918. In reversing the trial court's decision finding that Barnes adversely possessed the property, this court held as follows:

> Where there has been a severance of the legal interest in the minerals from the ownership of the land, it has been held as to solid minerals, and the same rule has been applied to oil and gas, that adverse possession of the land is not adverse possession of the mineral estate and does not defeat the separate interest in it. [Citation omitted.] In *Scott v. Laws*, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369, the court said that, since there was a severance of the mineral estate from the surface estate, the owner of the minerals did not lose his right or his possession by any length of nonuser, nor did the owner of the surface acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface mere.
>
> This rule was approved by this court in *Bodcaw Lumber Co. v. Goode*, [160 Ark. 48, 254 S.W. 345 (1923)], and the court said: "The rule of those authorities is that the title to minerals beneath the surface is not lost by nonuse nor by adverse occupancy of the owner of the surface under the same claim of title, and that the statute can only be set in motion by an adverse use of the mineral rights, persisted in and continued for the statutory period."
>
> *So it may be taken as settled that the two estates when once separated, remain independent, and title to the mineral rights can never be acquired by merely holding and claiming the land, even though title be asserted in the minerals all the time. The only way the statute of limitation can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by opening mines and operating the same. It is only when such possession has continued for the statutory period that title to the mineral estate by adverse possession is acquired.*

*Id.* at 682 (emphasis added). Other cases have held similarly. *See, e.g., Taylor v. Scott,* 285 Ark. 102, 685 S.W.2d 60 (1985) (when a mineral ownership has been severed by deed from the surface ownership, adverse possession of the surface is ineffective against the owner of the minerals unless the possessor actually invades the minerals by opening mines or drilling wells and continues that action for the necessary period).

Bonds's argument in her reply brief that mineral rights and timber rights are not analogous is not well taken,[1] especially in light of her concession in her opening brief that timber rights are a *profit à prendre.* Timber rights are indeed a *profit à prendre, see Black's Law Dictionary* 1483 (6ᵗʰ ed. 1990). Further, a *profit à prendre* is defined as a "right to take from the soil, such as by logging, mining, drilling, etc." *Id.* at 1211. The right of *profit à prendre* is a "right to make some use of the soil of another, such as the right to mine metals, and it carries with it the right of entry and the right to remove and take from the land the designated products or profit and also includes right to use such of the surface as is necessary and convenient for exercise of the profit." *Id.* In sum, while we do not conclude that timber and mineral rights are necessarily identical in nature, both rights involve the right to remove the subject goods from the surface itself; neither right profits its owner until it is exercised by removing the goods from the land. Title to such rights is separate and apart from title to the surface.

In conclusion, we hold that Bonds's reliance on *Jones v. Barger, supra,* is misplaced, and § 18-11-102 is likewise inapplicable, because one cannot adversely possess timber rights merely by paying taxes on the land. In order to establish adverse possession, the possession must be actual, open, continuous, hos-

---

[1] The arguments raised by the dissent, regarding the purported distinctions between timber and mineral rights, go far beyond the arguments presented by the parties in their briefs. Our analogy between timber and mineral rights extends only so far as our taxing statutes, Ark. Code Ann. § 26-26-1109 and -1110, tax these interests separate and apart from the underlying surface estate. Further, to the extent the dissent relies on the validity or conscionability of the one-hundred-year term of the timber deed, we hold *infra* that the trial court correctly concluded that the issue of the validity of the timber deed was barred by the statute of limitations.

tile, exclusive, and be accompanied by an intent to hold adversely and in derogation of, and not in conformity with, the right of the true owner. *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000); *Staggs v. Story*, 220 Ark. 823, 250 S.W.2d 125 (1952). Further, to adversely possess property on which another holds a superior right to timber growing thereon, there must be actual adverse possession for seven consecutive years before the commencement of the suit. *Collins v. Bluff City Lumber Co.*, 86 Ark. 202, 205, 110 S.W. 806 (1908). If the owner of the surface holds the land upon which the timber is growing, it is presumed, unless the contrary appears, that he or she holds in subordination to the rights of the owner of the timber deed, such possession being consistent with the right to the timber; mere possession is not sufficient to bar recovery. *Id.* Here, Bonds did nothing to actively assert her interest in the timber growing on the land until she filed this suit. This was insufficient to claim an adverse interest in the property, and the trial court did not err in finding in favor of Carter on this issue.

In her second point on appeal, Bonds argues that the trial court erred in concluding that the statute of limitations barred her challenge to the validity of the timber deed. In this respect, she contends that public policy considerations concerning the inherent "unconscionability" of the 100-year timber deed somehow trumped the seven-year statute of limitations for bringing actions to recover lands. *See* Ark. Code Ann. § 18-61-101 (1987). She also avers that the Uniform Commercial Code provides authority for setting aside unconscionable contracts, and cites *Davis v. Kolb*, 263 Ark. 158, 563 S.W.2d 438 (1978), wherein this court set aside a timber deed for unconscionability. However, *Davis* did not involve any question of the applicable statute of limitations, or such statute's effect in barring the underlying suit.

 In *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999), this court had the following to say about the interplay between public policy and statutes of limitations:

> Any statute of limitation will eventually operate to bar a remedy, and *the time within which a claim should be asserted is a matter of public policy, the determination of which lies almost exclusively in the legislative domain, and the decision of the General Assembly in*

> that regard will not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment. [Citations omitted.]

*Id.* at 103 (emphasis added).

■ Bonds simply offers no convincing authority to support her argument that public policy concerns should override the applicable seven-year statute of limitations, nor does she make any argument whatsoever that the legislature made a "palpable error" in determining the statute of limitations for bringing suits to recover land. This court has repeatedly held that we do not consider assignments of error that are unsupported by convincing authority. *Hurst v. Holland,* 347 Ark. 235, 61 S.W.3d 180 (2001); *Public Defender Comm. v. Greene County,* 343 Ark. 49, 32 S.W.3d 470 (2000); *Federal Fin. Co. v. Noe,* 335 Ark. 78, 983 S.W.2d 107 (1998).

For the foregoing reasons, the order of the chancery court is affirmed.

ARNOLD, C.J., CORBIN and HANNAH, JJ., concur; THORNTON, J., dissents.

JIM HANNAH, Justice, concurring. I concur with the majority's decision. First, I agree with the dissent's analysis that there is a difference between a timber deed, which is more akin to the sale of a crop, and a deed granting mineral rights, which is a separate estate in the minerals beneath the surface. Common sense dictates that while a mineral estate and a surface estate can coexist due to their different positions on and under the land, a surface estate and a timber deed or contract relate to the same locale — the property above ground. The respective rights of mineral and surface owners are well settled. The owner of the minerals has an implied right to go upon the surface to drill wells to his underlying estate, and to occupy so much of the surface beyond the limits of his well as may be necessary to operate his estate and to remove its products. *Diamond Shamrock Corp. v. Phillips,* 256 Ark. 886, 511 S.W.2d 160 (1974). His use of the surface, however, must be reasonable. *Id.* The rights implied in favor of the mineral estate are to be exercised with due regard for the rights of the surface owner. *See id.* (citing *Getty Oil Co. v. Jones,* 470

S.W.2d 618 (Tex. 1971)). However, with regard to a timber interest and a surface estate, until the timber is harvested, use of the surface by the surface owner is basically suspended pending the expiration of the contractual term over the timber. For example, a surface owner cannot build a house in a grove of contractually conveyed timber without either cutting down the timber and injuring the timber owner's interest, or waiting to the detriment of his interest until the timber is harvested. If a timber estate were perpetual, as can be a mineral estate, the surface owner could conceivably be forever barred from developing his land for fear of damaging the timber owner's interests.

Although I agree with the dissent on this point, I must concur in affirming this case because I think Ms. Bonds did not assert the proper claim below to challenge the timber contract at issue here. Certainly, as the dissent notes, the document in this case is a contract for the sale of "all the merchantable pine and hardwood timber standing, growing and being on. . . [the land]." The contract is to be performed within one hundred years. To challenge this contract, Ms. Bonds argued that the timber contract was void *ab initio* because she alleged that Mr. Carter defrauded Mr. Smith by taking advantage of Mr. Smith's alcoholism to obtain the contract, that a timber contract with a term of one hundred years to perform is against public policy for improper restraint of property, and that the timber contract and description had been materially altered after Mr. Smith signed the contract. These, however, appear to be the claims Ms. Bond asserted in her original lawsuit in 1982, in which she nonsuited her claims pursuant to Ark. R. Civ. P. 41(b) and then never refiled. The trial court noted that the action was dismissed for want of prosecution on January 15, 1986. While I believe that these particular claims are barred by the statute of limitations, I do not think that a dismissal of this current action would bar Ms. Bonds from bringing a different action such as a challenge to the reasonableness of Mr. Carter's failure to remove "all the merchantable pine and hardwood timber standing, growing and being on. . . [the land]" that was present in 1981 when the contract was made, or to compel Mr. Carter to remove the only the "merchantable" timber in existence in 1981 and to enjoin him from removing any other timber that matured

and became "merchantable" after the moment the contract was created. The statute of limitations perhaps has not run on these or other causes of action to properly enforce the contract pursuant to our case law and consistent with public-policy considerations. Accordingly, I concur and would affirm the chancery court.

ARNOLD, C.J. and CORBIN, J., join.

R AY THORNTON, Justice, dissenting. Because I believe that there is a difference between a timber deed and a deed granting mineral rights, and because I think that Arkansas Code Annotated § 18-11-102 *et seq.* (1987) applies to timber land, I must respectfully dissent.

The majority opinion is premised upon the notion that a timber deed is analogous to a mineral-rights deed. Based on this assumption, the majority concludes that Ms. Bonds may not follow the procedure outlined in Ark. Code Ann. § 18-11-102 *et seq.* to acquire any rights to the timber identified in Mr. Carter's timber deed. This assumption is misplaced. We have held that:

> there is a broad distinction between a sale of timber and mineral rights, for the use of the former necessarily creates a burden upon the owner of the surface which is not consistent with use by the latter, whereas the use of the surface for mining purposes is only incidental and does not necessarily impair to a serious extent the enjoyment of the surface rights.

*Bodcaw Lumber Co. v. Goode*, 160 Ark. 48, 254 S.W. 345 (1923).

Because there is a "broad distinction" between a timber deed and a mineral-rights deed, I do not think that we can look to our previous case law involving mineral rights to determine whether Ark. Code Ann. § 18-11-102 *et seq.* may be used to quiet title in land that is subject to a contract for sale of merchantable timber. It appears that the question whether a property owner may perfect his title to land that is the subject of a timber deed by payment of taxes for a period of numerous consecutive years pursuant to Ark. Code Ann. § 18-11-102 *et seq.* is now being raised for the first time, although we have previously decided that the applicable provisions of the statutes will support the perfection of a clear title notwithstanding a record title held by the original owner of the

property. *See Wimberly v. Norman*, 221 Ark. 319, 253 S.W.2d 222 (1952); *see also Jones v. Barger*, 67 Ark. App. 337, 1 S.W.3d 31 (1999).

This issue of first impression requires us to review a chancellor's interpretation of a statutory provision. As we have stated on numerous occasions, we consider chancery cases *de novo* on the record. *Bharodia v. Pledger*, 340 Ark. 546, 11 S.W.3d 540 (2000). In *City of Lowell v. M & N Mobile Home Park*, 323 Ark. 332, 916 S.W.2d 95 (1996) we elaborated on this standard of review. Specifically, we explained:

> In appellate review of ordinary equity cases there are two different components of the chancellor's ruling that are considered. The appellate court will not set aside a chancellor's finding of fact unless it is clearly erroneous. This deference is granted because of the regard the appellate court has for the chancellor's opportunity to judge the credibility of the witnesses. However, a chancellor's conclusion of law is not entitled to the same deference. If a chancellor erroneously applies the law and the appellant suffers prejudice, the erroneous ruling is reversed. Manifestly, a chancellor does not have better opportunity to apply the law than does the appellate court.

*Id.* (internal citations omitted).

In our review of the chancellor's conclusions of law, we must also remain mindful of our standard of review for matters of statutory construction. We review issues of statutory construction *de novo*; it is for this court to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454 , 995 S.W.2d 341 (1999). We are not bound by the decision of the trial court. *Id.*

I turn now for a *de novo* review of the chancellor's interpretation of Ark Code Ann. § 18-11-102 *et seq.* On appeal, Ms. Bonds contends that timber resources are different than mineral estates and that the statutory provisions of Ark. Code Ann. § 18-11-102 *et seq.* anticipate gaining ownership of land by prolonged payment of taxes on land in which a timber deed was once granted. Specifically, she argues:

> It is disingenuous and counterintuitive in Arkansas to suggest that land or real property—especially in a wild and unimproved or

unimproved and unenclosed state for any seven year of fifteen year or more period does not also connote growing timber. For adverse claimants to possess land with timber is reasonable. Appellee distinguishes appropriately 'mineral estates' and 'interests' and the necessity that they be opened to be adversely possessed in Arkansas. However, minerals are dormant assets of the land, beneath the surface estate. They are not wasted if left undisturbed and their true economic significance (for taxation purposes and otherwise) arises at severance. Further, unopened mineral estates rarely bind surface alienability or use.

But control of the timber estate–in this case putatively for one hundred years–controls all practical surface usage and alienability of the land for a century. The timber resources, unlike unopened mineral estates, are visible, growing, and currently dominating the land's use and value.

I agree wholeheartedly with Ms. Bonds. The conveyance by warranty deed of title to a mineral estate is not analogous to a present contract for sale of a crop, namely the merchantable timber, that is growing on the surface of the land. For example, in *Bodcaw*, we quoted the language used in a warranty deed that reserved mineral rights. The document stated:

Reserving to the grantor, *its successors and assigns*, all of the gas, oil and minerals and mineral rights in and under said land. . .*if same shall be necessary for, or desired by it, its successors or assigns* — such pipe lines for oil and gas and such telephone and telegraph lines and such right of way, however, not to infringe upon or interfere with any improvements upon said land without payment of a reasonable amount for damages caused thereby.

*Id.* (Emphasis added.) *Bodcaw* reflects a carving out of the mineral interest from the surface rights. That case holds that such mineral interest can be distinguished from the ownership of the title to the surface estate. The title to minerals can be retained in perpetuity while the surface owner enjoys his estate in perpetuity. *Id.* In *Bodcaw*, we also held that the separate title to the enjoyment of the minerals "is retained in perpetuity" and that:

the statute of limitations does not run against these rights unless there is an actual adverse holding which constitutes an invasion of these particular mineral rights. Such is the unanimous view in all

the authorities which hold that there is a right of separation and separate conveyance.

*Id.* In *Bodcaw*, we drew a distinction between a sale of merchantable timber as contrasted with a retention of an interest in minerals in perpetuity. We also pointed out that unlike a reservation of title to minerals in perpetuity, a mere lease for the purpose of exploring for gas, and the production of the same, would allow an abandonment of the leasehold rights unless work began within a reasonable time. *Id. (citing Mansfield Gas Co. v. Alexander,* 97 Ark. 167, 133 S.W. 837 (1911)). There is a similar distinction between a present sale of merchantable timber and a lease of the surface for the purpose of growing timber in the future.

In contrast to the retention of rights to minerals in perpetuity, we held in *Liston v. Chapman & Dewey Lumber Co.,* 77 Ark. 116, 91 S.W. 27 (1905) that a timber deed to merchantable timber relates only to the purchase of merchantable timber standing upon the property at the time of the conveyance, and that the holder of the timber deed only has the right to remove such merchantable timber together with the right to enter upon the land for a reasonable time to harvest his personal property. In *Liston,* we defined the term "merchantable" to mean "such timber as would bring the ordinary market price at the time the deed was executed." *Id.*

In the case now before us, it is clear that there was no conveyance of title or lease of the surface for the purpose of growing timber. The timber deed before us was entered on June 18, 1980, and provides:

> This contract and agreement made and entered into by and between Eddie Smith parties of the first part and Barry Carter parties of the second part. . . The parties of the first part have this day and by this act and in these presents grant, bargain, sell, convey, set over, transfer, and deliver unto said party of the second part, with full guarantee of title and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors, the following described property towit: *all the merchantable pine and hardwood timber standing, growing and being on. . .*[the land].

There is no language purporting to convey any interest to Mr. Carter's heirs and assigns. The sale conveys only a present interest in a growing crop, and does not grant a lease for a term of years. Eddie Smith contracted for the sale of "merchantable pine and hardwood timber" then standing on the land, and agreed that Mr. Carter may cut and remove the property he has purchased within one hundred years.

Faced with an unlimited time for removing timber in *Liston, supra*, we held that the trial court was correct in finding that "all of the timber less than eighteen inches in diameter at the stump was not merchantable in the month of April 1898, and [therefore] is the property of plaintiffs [landowners]." In *Liston*, we held that "defendant had a right to enter upon the land and remove the timber and to cut and remove all timber not less than eighteen inches at the stump." *Id.* We further held that after five years "a reasonable time had not expired for cutting and removing the timber." Finally, we observed that the "timber under eighteen inches at the stump, of the kinds named, was not merchantable" and was retained by the seller. *Id.*

In the case now before us, there was no language in the timber deed to create any estate for growing timber. Under the principles we established in *Liston*, it is clear that Ms. Bonds retained full ownership of the land together with all growing timber that was not conveyed as merchantable pine and hardwood timber on the 18th of June 1980.

In response to Mr. Carter's motion for summary judgment, Ms. Bonds presented to the trial court an affidavit that stated that a timber deed does not convey an interest in the land. The affidavit by Teddy Reynolds addressed the distinction between the timber deed found in this case and a conveyance of an interest in the underlying real estate. Mr. Reynolds's affidavit was not controverted. In his affidavit, Mr. Reynolds testified that:

> The deed is for all the merchantable pine and hardwood timber standing, growing, and being on the property. 'Merchantable' is a term of art in the timber industry that has the same meaning today as it did in 1980.

\* \* \*

> Further, a timber deed designates a transaction regarding timber to be harvested and is distinguished from a lease of surface rights for growing timber. The two concepts are not at all interchangeable and the terms are not used interchangeably in the industry.
>
> \* \* \*
>
> Whether for one or one hundred years, the Smith/Carter 'timber deed' sets its term only for felling, cutting, and removing the merchantable timber, not for leasing the surface rights to grow timber.
>
> \* \* \*
>
> So, it seems to me that Mr. Carter only bought from Mr. Smith the timber that was upon the property and merchantable as of June 18, 1980. There is no reference or even slight hint of a lease of surface rights for timber production in this instrument.

It is clear that this issue was presented to the chancellor and that this issue was brought forward for our review. In deciding a case of first impression of the application of Ark. Code Ann. § 18-11-102 *et seq.* to a contract for sale of merchantable timber, we must perform a *de novo* review of the record, and make our own interpretation of the statute.

In so doing, I believe that an analysis of the public policy behind collecting taxes leads to the conclusion that the failure of Mr. Carter to assess or pay taxes on standing timber, as provided by Ark. Code Ann. § 26-26-1109 (Repl. 1997), resulted in Ms. Bonds's payment of taxes upon both the land and the timber for more than twenty years. This triggers the application of Ark. Code Ann. § 18-11-102 *et seq.* Here the only person paying taxes on the land and the timber was Ms. Bonds. The legislative intent was to collect taxes upon both the land and the timber. All of the taxes were paid by Ms. Bonds. Arkansas Code Annotated § 18-11-102 *et seq.* provides that title may be quieted in the person paying such taxes for the required statutory period.

Arkansas Code Annotated § 18-11-102 *et seq.* allows a person to take possession of "unimproved and unenclosed land" or "wild and unimproved land" when he pays the "taxes thereon" for *at least* seven years. *Id.* We have defined "unimproved and unen-

closed land " to mean land that is in a "state of nature," "wild," or "not cleared." *Fenton v. Collum*, 104 Ark. 624, 150 S.W. 140 (1912).

In summary, from our cases interpreting deeds of minerals, it is well established that an estate in perpetuity is created by a conveyance of minerals, and that this estate is independent of rights to ownership of the surface. For that reason, adverse possession of the surface does not impair the separate ownership of the mineral estate. That principle does not apply to the timber deed in this case because no leasehold or other interest in the land was ever created. Mr. Carter simply purchased merchantable pine and hardwood timber on the date of the contract. The conveyance of merchantable timber carries with the purchase the right to enter upon the land for a reasonable time for the purpose of removing what has been purchased. Provision of a limited time for cutting and removing the merchantable timber does not establish an estate in the land, and is subject to the provisions of Ark. Code Ann. § 18-11-102 *et seq.* whereby a clear title to the land is acquired by the payment of taxes for a period of seven or fifteen years. In order to avoid the operation of those statutory provisions, Mr. Carter had an opportunity to separately assess and pay property taxes upon his merchantable timber until he harvested his crop. This was not done. There was no separate assessment or payment of taxes upon the timber. The taxes on the merchantable timber as well as all other taxes on the land were paid by Ms. Bonds each year for more than twenty years. Payment of the taxes on unimproved land according to Ark. Code Ann. § 18-11-102 *et seq.* clears title to such land against claims of other interests in the property except for severed mineral estates. This is the law even when the contesting holder of title claims an interest based on record title or other claims of title to the land. The operation of these statutes clearly extinguishes any contractual right to enter upon the land to harvest merchantable timber purchased more than twenty years earlier.

In the case now before us, the land in dispute was approximately forty-nine acres of timberland. In his response to request for admissions, Mr. Carter admitted that this land was wild and unimproved. It is undisputed that Ms. Bonds paid the taxes on

this land from 1981 to 1998. The instrument conveying all merchantable pine and hardwood timber did not include anything more than a sale of merchantable timber in existence at the time of the sale. Based on the language of Ark. Code Ann. § 18-11-102 *et seq.*, Ms. Bonds acquired possession to any timber Mr. Carter failed to remove during the running of the statutes. Accordingly, I would hold that the chancellor's statutory interpretation was clearly erroneous.